Barnes v. Silveus et al., Appellant.

Argued April 20, 1934.

Before TREXLER, P. J.,
KELLER, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Carroll Caruthers,* for appellant.

*Howard H. Whitehead,* and with him *Charles C. Crowell* and *Daniel V. Crowell,* for appellee.

OPINION BY PARKER, J., July 13, 1934:
This is an appeal from an order or decree of a court

of common pleas refusing the petition of a defendant, Frank J. Filtz, to open a judgment entered by confession.

It was admitted that on April 17, 1929, Fred Silveus and Frank Filtz gave to the plaintiff a note for $950, payable one day after date, containing a power of attorney to confess judgment and that the note has not been paid; that on March 3, 1930, Fred Silveus and Frank Filtz, individually and the same parties as partners doing business as "Fred Silveus," were adjudicated bankrupts and on March 26, 1931, the individuals and partners were given a final discharge; that the note in question was not included in the schedules of creditors of either Frank Filtz or the partnership known as "Fred Silveus," but was scheduled in the list of creditors of Fred Silveus, individually. Judgment was confessed on the note on August 31, 1931. Did the discharge release the claim of the plaintiff against Frank Filtz?

Section 17a of the Federal Bankruptcy Act of 1898 provides: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as......(third) have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy." Section 57 (n) also provides: "Claims shall not be proved against a bankrupt estate subsequent to six months after the adjudication." (Acts July 1, 1898, c. 541 §57, 30 Stat. 560; Feb. 5, 1903, c. 487, §12, 32 Stat. 799; May 27, 1926, c. 406 §13, 44 Stat. 662.)

It having been conceded that the debt in question was not included at any time in the schedules of either Filtz or the partnership, the defendant undertook to show that the plaintiff had actual knowledge in time for proof and allowance. To establish such knowledge, Filtz testified that about two months after March

27, 1930, the plaintiff came into the store where he was working for the purpose of collecting from him the claim in question, and that he then said to her that he had "just come through bankruptcy" and was not in shape to pay at that time. This conversation was denied by the plaintiff who further stated that she did not know of the bankruptcy of Filtz until June or July, 1931, which was more than a year after Filtz was adjudged a bankrupt and a month after he was finally discharged. The defendant also relied upon what he asserts is some corroboration of his statement. We are unable, however, to attach any probative value to such alleged corroborative evidence. It appeared from the proofs that the plaintiff did have knowledge of the bankruptcy of Fred Silveus and attended a meeting of his creditors, and by reason of the fact that Silveus and Filtz were partners it is urged that the plaintiff must have had knowledge of the bankruptcy of Filtz. However, it further appeared that the partnership business, a mercantile one, was conducted under the name of Fred Silveus, and the plaintiff testified that she always assumed that Filtz was an employe or clerk for Silveus and never knew of a partnership until 1931. The bare fact, under these circumstances, that she attended a meeting of creditors of Silveus, not even of the partnership, would not be sufficient to show that she had knowledge of the bankruptcy of another party. Neither was there any value in the offer of the record of an execution and sheriff's sale of real estate at which Mrs. Barnes became a purchaser. To have acquired any knowledge of the bankruptcy of Filtz, it would have been necessary to have examined all the proceedings in the office of the prothonotary, and then the most that can be said would be that the person so examining the record might have been put upon inquiry to make further investigations. This would come far short of proving actual knowl-

edge upon the part of Mrs. Barnes of the bankruptcy proceeding. We find no probative value in any of the so-called corroborative evidence.

The chancellor, after a careful analysis of the evidence, found as a fact that "the vague testimony of Frank Filtz—contradicted by the positive testimony of Edna F. Barnes—is conclusive that Frank Filtz has failed to establish, by the weight of the evidence, that Edna F. Barnes had actual knowledge of the proceedings in bankruptcy against Frank Filtz, prior to September 3, 1930.

Knowledge of bankruptcy proceedings on the part of a creditor of the bankrupt, which is not acquired until after his discharge, though in time to prove his claim under the Bankruptcy Act of 1898 and to move to revoke the discharge, is not the "actual knowledge of the proceedings in bankruptcy" which, under Section 17, is essential to the release, by the discharge of provable debts which have not been duly scheduled. "Actual knowledge of the proceedings, contemplated by the section [17], is a knowledge in time to avail a creditor of the benefits of the law,—in time to give him an equal opportunity with other creditors,—not a knowledge that may come so late as to deprive him of participation in the administration of the affairs of the estate, or to deprive him of dividends": Birkett v. Columbia Bank, 195 U. S. 345. " 'Actually' means 'as an actual or existing fact'; and the word 'actual' is used as 'opposed to constructive' ": Maguire v. James Lees & Sons Co., 273 Pa. 85, 88, 116 A. 679.

The court below correctly held that the burden of proof rested on defendant to show actual knowledge on the part of the plaintiff. Under the Bankruptcy Act of 1867, creditors who had proven claims were barred by the bankrupt's discharge although such creditors' names were omitted from the schedules or incorrectly described. As was pointed out by the

United States Supreme Court in Birkett v. Columbia Bank, supra, the Act of 1898 placed a new burden upon the bankrupt. By that act he is required to file within ten days a schedule of his property, a list of his creditors, showing their residences if known, if not known that fact to be stated, and amounts due to each. These schedules are required to be made in triplicate, one copy for the referee, one for the clerk, and one for the trustee. It was there said: "The provisions of the law relied upon by plaintiff in error are for the benefit of creditors, not of the debtor. That the law should give a creditor remedies against the estate of a bankrupt, notwithstanding the neglect or default of the bankrupt, is natural. The law would be, indeed, defective without them. It would also be defective if it permitted the bankrupt to experiment with it,—to so manage and use its provisions as to conceal his estate, deceive or keep his creditors in ignorance of his proceeding, without penalty to him. It is easy to see what results such looseness would permit,—what preference could be accomplished and covered by it."

It seems clear to us that where it appears that a bankrupt does not schedule an indebtedness, the burden is upon such bankrupt to show actual knowledge upon the part of the creditor of the bankruptcy proceedings in time to prove his claim. The present bankruptcy act uses very emphatic language when, in effect, it says that debts shall not be discharged which have not been scheduled in time for proof and allowance unless the creditor has received actual notice. A method is provided for the giving of the notice, and if that procedure is not followed the burden ought to be upon the one through whose fault the situation arose. See Parker v. Murphy, 215 Mass. 72, 102 N. E. 85; Wylie v. Marinofsky, 201 Mass. 583, 88 N. E. 448; Wineman v. Fisher, 135 Mich. 604, 608, 98 N. W. 404.

By Section 21f of the Bankruptcy Act, a certified

copy of an order granting a discharge "shall be evidence of the jurisdiction of the court, the regularity of the proceedings, and of the fact that the order was made." The United States Supreme Court prescribed the form (No. 59) of the "order of discharge" which contains a recital that the bankrupt has been discharged from all provable debts existing at the date of the filing of the petition, excepting such as are by law excepted from the operation of a discharge in bankruptcy. In Kreitlein v. Ferger, 238 U. S. 21, it was said: "This provision of §21f was made in contemplation of the fact that the bankrupt might thereafter be sued on debts existing at the date of the filing of the petition in bankruptcy; and was intended to relieve him of the necessity of introducing a copy of the entire proceedings, so that he might obtain the benefit of his discharge by the mere production of a certified copy of the order." That case is authority for the general statement that the offering of a discharge makes out a prima facie case for a debtor who may be sued. However, the defendant here followed the offer of his discharge by proof of the schedules filed and an admission that the debt in question was not scheduled in either the individual schedule of Filtz or the partnership schedule. This, in our opinion, nullified the presumption arising from the discharge, and it became incumbent on the individual to show actual knowledge on the part of the plaintiff. We believe this conclusion is not only not inconsistent with the decision in the Kreitlein case, but in harmony therewith.

We all agree with the conclusion reached by the court below. There was at best but oath against oath, and the weight of the evidence was with the plaintiff.

It was the province of the lower court, sitting as a chancellor, to pass upon the conflicting evidence and determine whether the judgment should be opened.

The findings of fact will not be disturbed except for clear errors, and none was disclosed here. This court, in VanScoten v. Botsford & Kunes, 98 Pa. Superior Ct. 270, said: "It is a well recognized rule that the court will not open a judgment on the unsupported oath of the defendant where his testimony, as appears in this proceeding, is directly contradicted by the plaintiff: Wright v. Linhart, 243 Pa. 221 [89 A. 973]; Hotaling v. Fisher, 79 Pa. Superior Ct. 103." The conclusions of Mr. Justice SIMPSON in the case of Warren Sav. Bk. & Tr. Co. v. Foley, 294 Pa. 176, 184, 144 A. 84, are applicable to the present situation. "The facts appearing in this case make clear the wisdom of the true rule, namely, that in determining whether or not a judgment should be opened, the court below is required to weigh the evidence of both parties, consider the credibility of the witnesses, give due effect to writings which cannot be subject to bias or forgetfulness, and, in the exercise of a sound discretion, decide, as a chancellor, whether or not, in equity and good conscience, defendant has a just defense to the note or bond on which the judgment was entered; and this court, on appeal, will reverse only if an abuse of discretion is shown."

Order affirmed at cost of appellant.