McGEHEE et al. v. BROOKINS et al.

No. 2022.

Court of Civil Appeals of Texas. Eastland.

May 10, 1940.

Rehearing Denied June 7, 1940.

D. M. Oldham, Jr., of Abilene, and Thomas & Thomas, of Big Spring, for appellants.

Coffee & Coffee, of Big Spring, for appellees.

FUNDERBURK, Justice.

This suit was brought by Mrs. William B. Brookins, joined by her husband, William B. Brookins, against Mrs. Ernestine McGehee and her husband, Albert McGehee, to foreclose an alleged judgment lien upon land in Howard County. The judgment, the basis of said lien, was for the sum of $982.18 recovered by Mrs. Brookins in Dallas County on June 19, 1933 in her then name of Dona Jarman against said Ernestine McGehee in her then name of Ernestine Chalk, a feme sole. (Plaintiff, among other things, prayed that "said indebtedness * * * be established"; but no facts were alleged showing any necessity of re-establishing by a new judgment the indebtedness already established by the former judgment.)

The defendants, among other things, pleaded in defense (1) fraud in the procurement of the original judgment; (2) payment of the debt, of which said judgment awarded recovery; (3) discharge in bankruptcy proceedings.

In a jury trial the verdict was for the defendants. However, upon motion of plaintiffs for judgment, notwithstanding the verdict, judgment was rendered for plaintiffs as prayed. From that judgment the defendants have appealed.

For brevity we shall refer to Mrs. William B. Brookins as plaintiff, and to Mrs. Ernestine McGehee as defendant.

The questions for decision are so presented as to make it proper to consider first, whether the judgment debt in question was duly scheduled in the bankruptcy proceedings. If a provable debt is duly scheduled by a bankrupt, it is unimportant whether the creditor receives actual notice of the bankruptcy proceedings. The law is "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * (third) have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy." 11 U.S.C.A. ch. 3, § 35. The debt in defendant's schedule was listed thus: "Mrs. Dona Jarman, Dallas, Texas, (Operating S. M. U. Shop, Dallas, Texas) ...........$892.18."

It was shown conclusively that when the schedule was filed the name of plaintiff was Dona Brookins and that her residence was in Chicago. At the time the judgment was recovered plaintiff's name was Dona Jarman; she operated a business under the name of "S. M. U. Style Shoppe" in Dallas, Texas, and resided at the Adolphus Hotel, in Dallas, Texas.

According to what seems to us to be the weight of authority a due scheduling of provable debts by a bankrupt includes (1) the correct name of the creditor, if known, and (2) the residence of the creditor, if known, and if not known, a statement to that effect.

It is believed that Freeman v. Hawkins, 77 Tex. 498, 14 S.W. 364, 19 Am.St.Rep. 769, as authority, compels the conclusion that the schedule here involved did not state the correct name of the creditor. For authority that the name of the creditor must be correctly stated in the schedule and the misnomer will be ground for holding that the debt was not "duly" scheduled, though the variance is comparatively unimportant, see cases annotated in U.S.C.A. Title 11, § 35, note 147, p. 193.

As to the other of said two essentials to the due listing of debts, the requirement is that the residence of the creditor be given, if known to the bankrupt, or if not known, that it be so stated. 11 U.S.C.A. ch. 3, § 25, subd. 8. The bankrupt is under duty to use reasonable diligence to ascertain the residence of the creditor, and if thereby he acquires knowledge of such residence he must state it correctly, and if he fails to ascertain such residence, to state that the residence is unknown. It is believed to be implicit in a schedule, which fails to state that the creditor's residence is unknown, that the bankrupt (after reasonably diligent inquiry, if necessary) knows such residence and has truly stated same.

In the schedule filed by the defendant, not only the name and residence of the creditor was incorrectly stated, but the name under which plaintiff formerly operated a business, and which was known to the defendant, was incorrectly stated; it being "S. M. U. Style Shoppe", but stated to be "S. M. U. Shop." It is our conclusion that the debt was shown to be not duly scheduled.

Not having been duly scheduled, it was not discharged by the order discharging the bankrupt, unless plaintiff was given notice or had actual knowledge of the bankruptcy proceedings. There was, in our opinion, no evidence whatever that plaintiff was given notice of the bankruptcy proceedings, and it is only material to inquire whether she acquired actual knowledge thereof.

In the absence of any evidence showing whether or not the debt was duly scheduled, it would have, upon evidence of the order of discharge alone, been presumed that it was duly scheduled and therefore discharged. However, it being established that the debt was not duly scheduled, the burden was upon defendant to show that plaintiff had actual knowledge of the bankruptcy proceedings. State of Texas v. National Bank of Cleburne, 116 Tex. 214, 288 S.W. 435; Hill v. Smith, 260 U.S. 592, 43 S.Ct. 219, 67 L.Ed. 419.

There was no evidence of such notice, unless it consisted of notice to Garland Woodward, an attorney, imputed by law to the plaintiff. The jury found that Garland Woodward, on or about January 1, 1936, acting as an attorney, had the judgment for collection and was acting as attorney in the employ of Mrs. Dona Jarman. It was also found that said attorney was acting in the employ of some other person or persons, other than Mrs. Dona Jarman.

It was agreed that the petition in bankruptcy was filed December 28, 1935, and the order of discharge was made August 3, 1936. On April 12, 1935, E. Taylor Armstrong, of the firm of Storey, Sanders & Sherrill, of Dallas, Texas, wrote to Garland Woodward, an attorney at Big Spring, advising that "Our client, Mrs. William Brookins, formerly Mrs. Dona Jarman, is the owner and holder of a valid judgment in the amount of $982.18 against Miss Ernestine Chalk. It is my understanding that the young lady's family is quite wealthy, and that the judgment should be collectible." They further advised as follows: "We have the case on a one-third contingent basis, and would be glad to remit one-half of our fee to you when the judgment is collected. I am enclosing herewith an abstract of judgment, together with stamps to cover the cost of recording, if you think it advisable to file the same at this time. Please let me hear from you at your earliest convenience in regard to this matter."

The next day (April 13, 1935) Woodward & Coffee wrote defendant as follows: "We have just had placed in our office for attention a judgment against you in the sum of $892.18 [$982.18] rendered in favor of Mrs. Dona Jarman and have been requested to take action to collect same. We will greatly appreciate your calling at our office regarding this matter and with kindest personal regards, we beg to remain" etc.

The abstract of judgment was duly filed on the 13th day of April, 1935. On January 4, 1936, Mr. D. M. Oldham, Jr., Referee in Bankruptcy, wrote to Woodward & Coffee a letter saying: "I understand you represent Mrs. Dona Jarman, one of the creditors in the above bankrupt case, whose address was given in the schedules as 'S. M. U. Shop, Dallas, Texas.' We sent her a notice to this address and it was returned this morning; therefore, I am enclosing to you two notices, one for you and the other to send to Mrs. Jarman. Please see that she gets the notice. Thanking you, I am, Very truly yours."

On February 13, 1939, Storey, Sanders, Sherrill & Armstrong wrote to Coffee & Coffee, attorneys at Big Spring, as follows: "In 1935 I had some correspondence with Mr. Woodward in connection with the judgment now held by Mrs. Wm. Brookins, formerly Dona Jarman, recovered against Miss Ernestine Chalk in 1933 in the sum of $982.18. At that time Mr. Woodward was of the opinion that due to the fact that Miss Chalk had no property in her own name at that time, it would be better to await the possibility of her inheriting property from her father. It is my understanding that her father died about Christmas of 1938, and my client is very anxious to collect this judgment if at all possible. As explained to Mr. Woodward, who, I understand, no longer lives in Big Spring, we have this matter on a one-third contingent basis and would be glad to remit one-half of our fee to you when the judgment is collected, if you desire to handle the same. We would appreciate your letting us hear from you immediately as to the possibility of effecting a collection of this judgment."

Mr. D. M. Oldham, Jr., attorney for defendant, as a witness, upon being asked from what source he received the information upon which he based the statement in the letter "I understand you represent Mrs. Dona Jarman" answered: "Mr. Woodward came and asked if this bankruptcy would be a release from the debt. Garland Woodward was the man who asked me * * * That is the only way you boys had anything to do

with it." He further testified: "Garland Woodward had been there with his judgment, as I remember it, to find if it would be a release and I told him it would. Q. You don't say Garland Woodward had a copy of the judgment with him, do you? A. Well, I didn't see it. The girl [defendant] testified on the stand that they had a judgment * * *. He [Garland Woodward] wasn't over there [at Abilene] on the bankruptcy proceedings. He had some other business. Garland frequently came by the office and discussed with me about bankruptcies and what to do in certain things. In this particular case he had a debt to collect against this girl. She knew she was going to be heir to a good deal of property and she couldn't get it then, and, of course, she didn't have anything, and he asked me if a bankruptcy would release it and I told him it would."

The question, stated concretely, is whether the foregoing constituted evidence sufficient to raise the issue and support a finding that Woodward was, on December 28, 1935, employed as attorney by, and for, plaintiff in such way that it was his duty to inform plaintiff of the existence of the bankruptcy proceeding. If such was the case, the law conclusively presumes that the attorney discharged his duty; otherwise, there is no such presumption, and we here repeat that, as we see it, there was no other evidence that plaintiff had any notice.

■ In our opinion, there was no evidence that Woodward, or Woodward & Coffee, at the time Woodward made inquiry of Oldham as to the effect of the bankruptcy proceeding on the judgment, or at any time from December 28, 1935 to August 3, 1936, including the time when Oldham wrote that he understood Woodward & Coffee represented plaintiff, was employed by plaintiff, or by her authority as her attorney to collect the judgment in question. The first letter was no more than an offer of employment by other attorneys not shown to have authority to employ attorneys for plaintiff. The letter of Woodward & Coffee to the defendant is no evidence that they had accepted the offer of employment, even from the Dallas attorneys. The letter was entirely consistent with the view that it merely sought information desired to enable Woodward & Coffee to determine whether they would accept the offered employment. They evidently filed the abstract of judgment, but it is shown by the recitations in a letter of the Dallas attorneys four years later that Woodward was of the opinion that due to the fact that Miss Chalk had no property in her own name, it would be better to await the possibility of her inheriting property from her father. The evidence is entirely consistent with the conclusion that the abstract of judgment was filed as any attorney would have done as a matter of courtesy, and the whole matter of employment for the future left unsettled. Woodward having filed the abstract of judgment, if he did, and having advised that further efforts to collect the judgment be deferred to await an uncertain contingency, it is quite natural that Woodward, upon hearing of the bankruptcy proceeding, would make the inquiry with which he is credited. The fact that he made the inquiry would be no evidence, we think, that he was at that time employed as the attorney to collect the judgment. It would be just as reasonably referable to a purpose on his part to advise the Dallas attorneys of his knowledge of a prospect to collect the judgment.

■ At any rate, there was an entire absence of any evidence that the Dallas attorneys had authority from the plaintiff to employ for her other attorneys. Giving all the evidence the strongest possible effect in favor of the defendant, the most that could be contended is that it shows employment by the Dallas firm of lawyers of the Big Spring firm to assist the former and be compensated, not by the plaintiff, but by the Dallas lawyers. "Where an attorney is employed by a firm of collecting agents who have received the claim to be collected from its owners, his knowledge is not that of the owners of the claim but only that of the collecting agency." 7 C.J.S., Attorney and Client, 856, § 69a; Hoover v. Wise, 91 U.S. 308, 23 L.Ed. 392.

■ The assignments of error under which it is contended, in effect, that the defendant was entitled to judgment on the ground that the debt for which the judgment awarded recovery had before suit been paid, and that defendant had not been cited to appear in the suit, seem to us to merit little discussion. It is deemed sufficient to say that such attack upon the judgment is collateral, and neither the pleadings, nor the evidence showed any valid defense upon such grounds.

It is, therefore, our conclusion that no error is shown, and the judgment of the trial court should be affirmed. It is accordingly so ordered..