[L. A. No. 16742. In Bank. Dec. 19, 1941.]

HARRY G. VAN DENBURGH, as Administrator, etc., Appellant, v. WALTER V. GOODFELLOW et al., Respondents.

Oscar S. Elvrum and Girard F. Baker for Appellant.

Otto A. Gerth for Respondents.

TRAYNOR, J.—On August 15, 1935, plaintiff Harry G. Van Denburgh, as administrator of the estate of Mrs. Ar-

thur J. Clark, obtained a judgment against defendants Walter V. Goodfellow and Elizabeth B. Goodfellow, upon a note secured by a mortgage. On September 10, 1935, the mortgaged premises were sold and a deficiency judgment was entered against the defendants. On September 23, 1936, the defendants filed separate petitions in bankruptcy in the Federal District Court, and each was adjudicated a bankrupt. They listed plaintiff's judgment in the schedule of debts attached to each bankruptcy petition. Under the caption "Creditors Whose Claims Are Unsecured" there was listed: "Harry G. Van Denburgh, Admr. of Estate of Mrs. Arthur J. Clark, deficiency on foreclosure judgment and sale . . . $20,000.00." The same indebtedness was also listed in each petition under the caption "Creditors Holding Securities" as follows: "Mrs. Arthur J. Clark, deceased, care of Harry G. Van Denburgh, 1010 Title Guarantee Building, Los Angeles . . . $26,000.00." Full information about the indebtedness was given by defendants in their schedules as well as at the first meeting of the creditors. Harry G. Van Denburgh neither resided nor had an office at 1010 Title Guarantee Building. His name and proper address appeared in the Los Angeles telephone book and the city directory. Van Denburgh's attorneys in the matter of the estate of Mrs. Clark, whose names did not appear in defendant's schedules, had offices on the tenth floor of the Title Guarantee Building in Los Angeles but not in room 1010. A copy of plaintiff's complaint, served upon defendants, gave the office address of plaintiff's attorneys as 1019 Title Guarantee Building, but defendants read this address as 1010 Title Guarantee Building because the figures were blurred.

A referee was appointed by the bankruptcy court and the first meeting of creditors was held on October 13, 1936. Notice of this meeting was published in the Los Angeles Daily Journal, but the notices intended for plaintiff Van Denburgh and mailed to the address given in the schedules were returned undelivered. In October, 1936, a clerk of the trustee in bankruptcy telephoned the office of plaintiff's attorneys to inquire about possible assets in their possession belonging to the bankrupts' estates. The clerk, however, did not talk to the attorneys; the person answering the telephone informed him that the attorney for whom he asked was no longer associated with the office. Plaintiff received notice of defend-

ants' bankruptcy proceedings on April 8, 1937. On May 24, 1937, plaintiff petitioned the referee in the Walter V. Goodfellow bankruptcy proceeding for leave to file a claim based on the deficiency judgment, and received permission to do so. No claim was filed in the Elizabeth B. Goodfellow bankruptcy proceeding. Plaintiff shared in the subsequent distribution of Walter V. Goodfellow's assets.

On May 3, 1937, plaintiff secured a writ of execution and levied upon property of Walter V. Goodfellow. Defendants thereupon moved to quash the execution and to restrain future executions upon the ground they were released from the indebtedness to plaintiff by the adjudications of bankruptcy. After each defendant had received a final discharge in bankruptcy on June 7, 1937, the superior court held a hearing, entered an order granting the motion, and gave judgment quashing the execution, enjoining plaintiff from securing any further writs of execution or attempting to enforce the judgment against defendants, and awarding costs to defendants. The trial court found that defendants had no intent to deceive the plaintiff and that "the plaintiff's name, claims and demands and description thereof, together with his address were properly and duly given and set forth by each of the defendants herein in their bankruptcy schedules . . . and that the plaintiff received actual notice of the filing of said bankruptcy petition and the pendency thereof of each of the defendants herein within the time prescribed by law for creditors to present and file their claims. . . . " Plaintiff has appealed from the order and judgment, contending that the debt was not discharged by the bankruptcy proceedings because it was not properly listed by the defendants in their bankruptcy schedules and because he did not receive notice of such proceedings within the time prescribed by the Bankruptcy Act.

Section 25 (8) (11 U. S. C. A., Sec. 25 (8)) of the Bankruptcy Act requires a voluntary bankrupt to file with his petition "a list of his creditors, showing their residences, if known, if unknown, that fact to be stated." The penalty for failure to schedule a debt properly is stated in section 35 of the act: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as . . . have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt,

unless such creditor had notice or actual knowledge of the proceedings in bankruptcy . . . ''

 It is well settled that a debt is not duly scheduled if the bankrupt has listed the creditor's address incorrectly. (See cases cited under 11 U. S. C. A., sec. 25, note 23; *Brown* v. *Tropp,* 106 Cal. App. 605 [289 Pac. 648]; *Parker* v. *Murphy,* 215 Mass. 72 [102 N. E. 85, 87]; *In Re D'Alessio,* 24 Fed. Supp. 563.) ''The bankrupt is under duty to use reasonable diligence to ascertain the residence of the creditor, and if thereby he acquires knowledge of such residence he must state it correctly, and if he fails to ascertain such residence, to state that the residence is unknown. It is . . . implicit in a schedule which fails to state that the creditor's residence is unknown, that the bankrupt (after reasonably diligent inquiry, if necessary) knows such residence and has truly stated same.'' (*McGehee* v. *Brookins* (Tex. Civ. App.), 140 S. W. (2d) 963, 964.)

 In the present case there is no evidence to support the finding of the trial court that plaintiff's address was properly set forth in defendants' bankruptcy schedules. The evidence establishes without contradiction that 1010 Title Guarantee Building was not the address of plaintiff, or of the estate of Mrs. Clark; or of plaintiff's attorneys. Since defendants could easily have determined plaintiff's correct address, their good faith in listing the debt is immaterial. (See *Fible* v. *Crabb,* 129 Ky. 461 [112 S. W. 576].)

 There is likewise no evidence to support the finding of the trial court that plaintiff received notice of the bankruptcy proceedings within the time prescribed by law for the filing of claims. Under the provisions of the Bankruptcy Act in force at that time a creditor's claim could not be allowed unless it was filed within six months after the date on which the debtor was adjudicated a bankrupt. (44 Stats. (part 2) 666, c. 406, sec. 13.) The evidence shows that plaintiff received no notice of the bankruptcy proceedings until April 8, 1937, more than six months after September 23, 1936, when defendants were adjudicated bankrupts. The notices mailed to the plaintiff by the referee were returned undelivered. No information was communicated to plaintiff or his attorneys by virtue of the telephone call of the trustee's clerk. Publication of a notice of the proceedings in the Los Angeles Daily Journal was not sufficient because the act

requires that actual notice be given to creditors. (*Santa Rosa Bank* v. *White*, 139 Cal. 703, 705 [73 Pac. 577]; *Ragsdale* v. *Bothman*, 81 Mont. 408 [263 Pac. 972]; *Strickland* v. *Capital City Mills*, 74 S. C. 16 [54 S. E. 220, 7 L. R. A. (N. S.) 426]; *Lynch* v. *McKee* (Tex. Civ. App.), 214 S. W. 484; *Interstate Credit League* v. *Widdison*, 50 Ida. 493 [297 Pac. 1106].)

█ A bankruptcy referee, however, may in his discretion permit a creditor to file a formal claim after the six-month period has elapsed, under the theory that the formal claim is merely an amendment to an informal claim made within the time limit. (*In re Lipman*, 65 Fed. (2d) 366; *In re Fant*, 21 Fed. (2d) 182; *Scottsville National Bank* v. *Gilmer*, 37 Fed. (2d) 227.) █ Defendants contend, therefore, that the notice to plaintiff on April 8, 1937, was within the time prescribed by law for the filing of claims, since plaintiff was permitted to file his formal claim in the Walter V. Goodfellow bankruptcy proceeding more than six months after the adjudication. It is established, however, that the notice required by the Bankruptcy Act must be given within the six-month period allowed by the act for the filing of claims. (*Industrial Loan & Investment Co.* v. *Chapman* (La. App.), 193 So. 504; *Bell* v. *Georgia Chemical Works*, 33 Ga. App. 286 [125 S. E. 871]; *Morganstern* v. *Tulchin*, 140 Misc. 44 [250 N. Y. Supp. 498]; *In re Welte*, 12 Fed. Supp. 612; *Hunter* v. *Hall*, 60 Ga. App. 493 [4 S. E. (2d) 69]; see *In re Feldesman*, 13 Fed. Supp. 1010; *In re R. B. Rose Co.*, 43 Fed. (2d) 446; *Brown* v. *Tropp, supra*.) █ Moreover, the creditor must receive such notice in time to enable him to take advantage of the benefits of the Bankruptcy Law "in time to give him an equal opportunity with other creditors." It may not come so late "as to deprive him of participation in the administration of the affairs of the estate. . . . " (*Birkett* v. *Columbia Bank*, 195 U. S. 345 [25 Sup. Ct. 38, 49 L. Ed. 231]; *Brown* v. *Tropp, supra; Reynolds* v. *Whittemore*, 99 Me. 108 [58 Atl. 415].) The creditor's right to participate in the administration of the affairs of the estate, including the right to vote for the trustee, cannot be disregarded on the theory that such participation would have made no difference. (*Brown* v. *Tropp, supra*.)

Clearly the defendants did not properly state plaintiff's address in their bankruptcy schedules nor did plaintiff receive notice in time to render the error of no consequence. In the absence of further action on plaintiff's part, the discharge of each defendant in bankruptcy would not release his debt.

■ In the Walter V. Goodfellow proceeding the referee permitted the plaintiff to file a formal claim, after the expiration of the six-month period, on the theory that it was an amendment to the claim shown to exist by the schedules of the bankrupt and his testimony at the first meeting of the creditors. On the basis of this claim the plaintiff shared in the bankrupt's estate. This voluntary participation by plaintiff in the bankruptcy proceeding operates to discharge the debt owed him by the bankrupt, despite the incorrect address and the late notice. It is true that certain types of debts for reasons of public policy, cannot be discharged by bankruptcy proceedings, and a creditor who files a claim and shares in the assets is not barred from subsequently enforcing the unsatisfied portion of the debt. (*Friend* v. *Talcott*, 228 U. S. 27 [33 Sup. Ct. 505, 57 L. Ed. 718]; *Allard* v. *La Plain*, 147 Wash. 497 [266 Pac. 688]. See *Meyer* v. *Price*, 250 N. Y. 370 [165 N. E. 814].) Such debts, listed in section 35 of the Bankruptcy Act, include liabilities for obtaining property by false pretenses or misrepresentations, for wilful and malicious injuries to person or property, for alimony or maintenance of wife or child, for seduction, for fraud, embezzlement, or misappropriation while acting in a fiduciary capacity, and taxes. A debt that is not discharged only because it is improperly scheduled, however, does not fall into this category for there is nothing in the nature of such a debt that requires a denial of discharge. (See *In re Baker*, 275 Fed. 511, 512.) ■ The provisions requiring either a correct statement of the creditor's address or actual notice to him are intended to insure the creditor an opportunity to participate in the administration of the bankrupt's estate and to share in the assets. ■ A creditor who refrains from making a claim against the bankrupt when these provisions are violated does not share in the assets of the estate but retains his debt unimpaired. If, on the contrary, he elects to file a claim with the permission of the referee, he waives any rights arising from defects in the schedule or

notice or from any detriment he may suffer because of having no opportunity to participate in the administration of the estate and receives in return the right to share in the distribution of assets. The principal right of a creditor in a bankruptcy proceeding, to which all other rights are incidental, is sharing in the assets. If a creditor such as the plaintiff in the present case elects to share in the assets, there is no reason why his debt should not be discharged.

Plaintiff, however, did not file a claim in the Elizabeth B. Goodfellow bankruptcy proceeding and the debtor there remains liable on the debt. That liability is in no way altered by plaintiff's claim in the Walter V. Goodfellow proceeding. The two proceedings were separate and the discharge of Walter V. Goodfellow did not discharge his codebtor. (Bankruptcy Act, 11 U. S. C. A., sec. 34; *Wilcox* v. *Hersch,* 43 R. I. 81 [110 Atl. 409]; *Barnes* v. *Silveus,* 114 Pa. Super. 214 [173 Atl. 837]; *In re Quackenbush,* 106 N. Y. Supp. 773. See cases cited in 11 U. S. C. A., sec. 34, notes 21, 22.) Defendants contend that if the detailed scheduling of plaintiff's debt and the bankrupt's extensive testimony thereon at the first creditors' meeting constituted a claim in the Walter V. Goodfellow proceeding, they must also constitute a sufficient claim in the Elizabeth B. Goodfellow bankruptcy proceeding. This contention fails to take account of the requirement in the Bankruptcy Act that the creditor must make proof of his claim. (11 U. S. C. A., sec. 93.) Information supplied by a bankrupt may be considered a claim only for the purpose of allowing a petitioning creditor to file an amended claim after the statutory period has expired, when equity and good conscience require that he be permitted to participate in the bankruptcy proceedings. There is nothing in the Bankruptcy Act that requires the creditor to petition for leave to file such an amended claim. (*Brown* v. *Tropp, supra; Birkett* v. *Columbia Bank, supra.*)

Since the motion by defendants to quash the execution is a special proceeding (Code Civ. Proc., sec. 23; *Murphy* v. *Davids,* 55 Cal. App. 416, 420, 421 [203 Pac. 802]; see *In re Sutter Butte By-Pass Assessment,* 190 Cal. 532, 537 [213 Pac. 974]), costs must be allowed the prevailing party. (Code Civ. Proc., sec. 1032 (a).) Defendants contend that the costs awarded them by the trial court were chargeable

against plaintiff personally, and are not reviewable on appeal because plaintiff personally has not appealed. ■ There is no charge of mismanagement or bad faith on the part of plaintiff, however, so costs are chargeable against the estate of Mrs. Clark, not against plaintiff personally, and the judgment should so state. (Code Civ. Proc., sec. 1026; *Sterling* v. *Gregory*, 149 Cal. 117, 121, 122 [85 Pac. 305].)

The order and judgment are affirmed insofar as they apply to Walter V. Goodfellow, and are reversed insofar as they apply to Elizabeth B. Goodfellow.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., and Carter, J., concurred.