Seth WARD *v.* Thomas MEYERS

78-287                                    578 S.W. 2d 570

Opinion delivered April 2, 1979
(In Banc)

*Rose, Nash, Williamson, Carroll, Clay & Giroir, P.A.,* by: *Kenneth Shemin* and *Webster L. Hubbell,* for appellant.

*Dodds, Kidd & Ryan,* by: *Donald S. Ryan* and *Richard N. Moore, Jr.,* for appellee.

JOHN I. PURTLE, Justice. On August 12, 1975, appellee filed a Bankruptcy Petition in the United States District Court for the Southern District of Florida. Among the creditors listed were Seth Ward and Yvonne Ward who were unsecured creditors. The notice of the bankruptcy proceedings was mailed to Seth and Yvonne Ward at the address of 11701 Fairway Drive, Little Rock, Arkansas, 72201. This notice was returned to the bankruptcy court with an indication that it was returned because the forwarding order had expired. Appellant's debt was discharged on December 18, 1975, in the Florida proceedings.

On November 23, 1976, appellant filed a complaint in the Pulaski County Circuit Court seeking to recover the balance of the promissory note which appellee had sought to discharge. Appellee made the affirmative defense that he had filed a voluntary Bankruptcy Petition which had resulted in the discharge of appellant's obligation.

In the trial of the Pulaski Circuit Court case the appellee pleaded the Bankruptcy Act as a defense. It was admitted that appellant had moved from 11701 Fairway Drive to 48 River Ridge Road, Little Rock, Arkansas, in June 1974. It was further admitted that appellee had signed as a guarantor on the note which had been executed by Bigelow Manufacturing Company, Inc. to appellant and his wife. It was further admitted that appellee had visited appellant in his new residence in Little Rock during the summer of 1974. It was stipulated between the parties that the Bankruptcy Petition listed Seth Ward and Yvonne Ward as creditors for an unsecured claim based upon the personal guarantee of the promissory note given by Bigelow Manufacturing Company, Inc. to the Wards; also that the Bankruptcy Petition did not list the street address where appellant resided at the time of the filing of the Bankruptcy Petition. It was further stipulated

that the notice sent to the Wards at 11701 Fairway Drive was returned to the bankruptcy court.

During the trial appellee testified that he had listed appellant's debt on the bankruptcy schedule and that he subsequently obtained the appellant's mailing address from the 1974 Little Rock telephone directory and furnished this to the bankruptcy court. He stated he thought the post office would forward the letter to Mr. Ward's new address as he did not remember the exact mailing address. He had not been told by the bankruptcy court or his lawyer that the notice had been returned as being unable to be delivered to the appellant at his former address. The testimony further showed that appellee and appellant had been in business together operating the Bigelow Manufacturing Company, Inc. out of Bigelow, Arkansas. Appellant was not an officer of the company but he owned about 12-1/2% of the stock in the company. Appellee testified that the Bigelow Company fell into financial difficulties, which was constantly discussed with appellant. Appellee resigned and left the company in July of 1974. Appellee then testified that he had received in the mail, in December of 1975, a communication from the bankruptcy court showing that he had been discharged. The next notice that he received from Ward was the complaint in the Pulaski County Circuit Court.

The trial court found that there was no evidence of fraudulent intent or wrongful motive on the part of appellee toward the appellant. The court further found that it was reasonable to assume that appellant had knowledge of the pending bankruptcy action in Florida but took no action in regard to the same. Appellant did not appear at the trial in Pulaski County to testify regarding the matters surrounding the notice and his interest in the company. Accordingly, the court held that the appellee was discharged in bankruptcy and that such discharge extinguished the debt of appellant; the complaint was dismissed, and appellant brings this appeal.

The only point on appeal is that the court erred in holding that Meyers had properly scheduled his debt to appellant in the Bankruptcy Petition. The pertinent section of the

Bankruptcy Act is 17a (3) which excepts from the operation of discharge in bankruptcy all provable debts which "have not been duly scheduled in time for proof and allowance, with the name of the creditor if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy." Therefore, all other debts would be discharged in the bankruptcy action. In order for a debt to be duly scheduled it must be on a list of creditors, filed in the bankruptcy court, showing the residence or place of business, if known, or if unknown that fact to be stated. The undisputed evidence in this case shows that the debt of appellant was duly listed but the mailing address was improperly stated.

Meyers' excuses for failure to notify Ward are that when he filed the petition he did not have Ward's new address "handy." He took an address from a 1974 telephone book, admittedly knowing that Ward had moved from that address at least a year before the bankruptcy petition was filed. His excuse was that he thought it would be forwarded by the Post Office Department.

In *Steele* v. *Thalheimer,* 74 Ark. 516, 86 S.W. 305, it was neither alleged nor shown that the bankrupt knew the address of the creditor or that the failure to give his correct address was intentional or fraudulent. Perhaps Meyers could not recall Ward's new address, but it is not unreasonable to assume that either he or his attorney, with only a slight inquiry, could have ascertained it. To say the least, Meyers could have told his attorney that he was giving an obsolete address. It is true that the evidence does not justify a finding that the failure of Meyers to give a correct address was fraudulent, but it cannot be said that it was not intentional. Furthermore, *American Southern Trust Co.* v. *Vester,* 183 Ark. 9, 34 S.W. 2d 747, is hardly appropriate for in that case the creditor's lawyer, who had been employed to collect the debt, had notice of the bankruptcy and the lawyer's name had been listed on the schedule as the person who held the note, evidencing the debt, for collection.

It seems clear that the debt under these circumstances was not duly scheduled, as required by the bankruptcy act.

The act requires that the bankrupt file a list of all his creditors showing their residences or place of business, if known, and if not known, a statement of that fact. Meyers failed to comply with the requirement for scheduling debts by failure to schedule any address and by later giving an address known by him to be incorrect, without even stating that the correct address was not known to him, as he should have done if he did not know it. 1A Collier on Bankruptcy (14th Ed.) 1686.2, § 17.23 (4); *Van Denburgh* v. *Goodfellow,* 19 Cal. 217, 120 P. 2d 20 (1941). Furthermore, if Meyers failed to exercise due diligence in ascertaining Ward's address (and his own testimony showed a total lack of diligence), the debt was not properly scheduled and it was not discharged. *Continental Purchasing Co.* v. *Norelli,* 135 N.J.L. 93, 48 A. 2d 816 (1946); 1A Collier on Bankruptcy (14th Ed.) 1687, § 17.23 (4). See also, *Jones* v. *Martin,* 23 Ariz. App. 182, 531 P. 2d 559 (1975); *Van Denburgh* v. *Goodfellow,* supra; *Reed* v. *Dippel,* 16 Pa. Dist. 126, 17 Am. B.R. 371 (1906); *Marlenee* v. *Warkentin,* 71 Cal. App. 2d 177, 162 P. 2d 321 (1945); *King* v. *Harry,* 131 F S 252 (D.C., 1955); *Salmon* v. *Sarno,* 265 App. Div. 114, 37 N.Y.S. 2d 870 (1942); *Taylor* v. *Thompson,* 39 S.W. 2d 923 (Tex. Civ. App., 1931). The requirement of duly scheduling the names and residences of creditors is to be strictly interpreted and applied by the courts. 1A Collier on Bankruptcy (14th Ed.) 1680, § 17.23 (1). See *Salmon* v. *Sarno,* supra, and cases cited therein; *State Farm Mutual Auto Ins. Co.* v. *Hall,* 221 Kan. 337, 559 P. 2d 357 (1977). In *Chevron Oil Co.* v. *Dobie,* 40 N.Y. 2d 712, 358 N.E. 2d 502 (1976), it is clearly recognized that a debt is not duly scheduled when the creditor's correct name and address are not given. That court said in the opinion in that case: "Consequently, a debtor who has erred in scheduling is not penalized, provided always that he has, at least, taken care to ascertain, if necessary, and schedule the creditor's correct name and address. (cf. *Miller* v. *Guasti,* 226 U.S. 170, 33 S. Ct. 49, 57 L. Ed. 173)." In that case, it was held that the debt was duly scheduled, without deciding whether previous holdings rested upon an outmoded view of the efficiency of the postal service, simply because the debtor was justified in relying on the only address ever provided him by Chevron Oil Company, the creditor, who was seeking to assert its insufficiency.

It was the intention of the bankruptcy act, as now written, to apply to bankruptcy proceedings the principle that due process of law contemplates notice of some kind to the creditor whose property is being taken in order that he may have his day in court and be heard before the court adjudicates against him. *Tyrrel* v. *Hammerstein*, 33 Misc. 505, 67 N.Y.S. 717, 6 Am. B.R. 430 (1900); *Wheeler* v. *Newton*, 168 App. Div. 782, 154 N.Y.S. 431 (1915); *Continental Purchasing Co.* v. *Norelli*, 135 N.J.L. 93, 48 A. 2d 816 (1946). The requirement of notice in the bankruptcy act is the only due process afforded to creditors. *State* v. *Bean*, 218 Ore. 506, 346 P. 2d 652 (1959); *Wheeler* v. *Newton*, supra.

If the scheduled address of the creditor is actually wrong, he will not be affected by the bankrupt's discharge, in the absence of proof that the creditor had knowledge of the proceedings. 1A Collier on Bankruptcy (14th Ed.) 1689, § 17.23 (4). The notice or actual knowledge must be actually existent and not merely constructive notice or imputed knowledge. 1A Collier on Bankruptcy (14th Ed.) 1692, § 17.23 (4); *Hunter* v. *Hall*, 60 Ga. App. 493, 4 S.W. 2d 69 (1939). The bankruptcy act contemplates that there be either personal notice or knowledge of the proceedings that is equivalent to personal notice. *Wheeler* v. *Newton*, supra; *Lynch* v. *McKee*, 214 S.W. 484 (Tex. Civ. App., 1919).

It is quite clear that the burden of showing notice or knowledge by a preponderance of the evidence was upon Meyers. *State Farm Mutual Auto Insurance Co.* v. *Hall*, supra; *Ragsdale* v. *Bothman*, 81 Mont. 408, 263 P. 972 (1928); *Venson* v. *Housing Authority*, 337 F. 2d 616 (5 Cir., 1964); *Industrial Loan & Investment Co.* v. *Chapman*, 193 So. 504 (La. App., 1940). The matter is extensively covered in 1A Collier on Bankruptcy (14th Ed.) 1696 — 1698, § 17.23 (6), where it is said:

> The superficial conflict of authority in regard to burden of proof (risk of persuasion) is reconciled by analyzing the language of § 17a(3), and by distinguishing the issues that may arise in a suit by a creditor upon a provable claim to which the bankrupt pleads a discharge in bankruptcy. The plea of a discharge in

bankruptcy is an affirmative defense, *i.e.*, a defense which the bankrupt has the burden of establishing. ***** When the bankrupt has put the certified copy of the order of discharge in evidence he has established a *prima facie* defense to any suit against him based on a debt existing at the time of the filing of his petition. The creditor then has the burden of proving that he comes within the exceptions enumerated in § 17a, which, as applied to clause (3), means that his claim was not duly scheduled in time for proof and allowance. ***** This done, the bankrupt must carry the burden of showing that the creditor comes within the "unless" clause, which reads, "unless such creditor had notice or actual knowledge of the proceedings in bankruptcy." For, as stated by the Supreme Court in *Hill* v. *Smith*, (260 U.S. 592, 2 Am. B.R. (N.S.) 537, 43 S. Ct. 219, 67 L. Ed. 419, aff'g 232 Mass. 188, 43 Am. B.R. 186, 122 N.E. 310, 2 A.L.R. 1667, noted in (1923) 36 Harv. L. Rev. 749), immediately after the quotation set out above:

> "But there is an exception to the exception, 'unless the creditor had notice,' etc., and, by the same principle, if the debtor would get the benefit of that, he must offer evidence to show his right. We agree with the court below that justice and the purpose of the section justify the technical rule that if the debtor would avoid the effect of his omission of a creditor's name from his schedules, he must prove the facts upon which he relies."

See also, *Wheeler* v. *Newton*, supra.

Since by the undisputed evidence, the debt was not duly scheduled, the burden of showing that Ward had notice or actual knowledge of the proceedings in bankruptcy rested upon Meyers. Meyers' own testimony is that the Ward claim was the biggest debt listed. He relies upon the fact that Ward owned approximately 12-1/2% of the stock in the Bigelow Manufacturing Company, a corporation, located in Bigelow (of which Meyers was president and of which Ward was not an officer), as evidence that Ward knew of the bankruptcy, simply because Bigelow was also listed as a creditor to whom

Meyers owed less than 10% of the amount listed as Ward's claim. It was prior to July, 1974, over a year before the bankruptcy petition, that Meyers was last in contact with Ward about Bigelow's financial condition. Meyers testified that he was *not* in contact with Ward about Meyers' personal finances and that he had no discussions with Ward about whether or not Meyers had paid the note. It was stipulated that after all credits had been applied, there was still a balance of $94,950 due Ward. It was also stipulated that the debt had been secured by *all* the assets of Bigelow Manufacturing Company. It was alleged in Ward's complaint, and not denied, that Ward foreclosed upon the security agreement and collected certain sums from the sale of Bigelow's assets and equipment.

Apparently the trial court gave considerable weight to the fact that Meyers had just cause to believe that mail addressed to Seth Ward, a prominent citizen and businessman in the community, would be delivered to his (proper?) address. Perhaps the trial judge felt that the court could take judicial notice of Ward's prominence. But he did not say that he was taking judicial notice of that fact, so appellant was not given an opportunity to be heard upon the propriety of that action. See Ark. Stat. Ann. § 28-1001, Rule 201 (Supp. 1977). In any event, this fact, if true, weighs heavily against appellee, because it establishes the fact that with only slight diligence, he could have ascertained Ward's correct address. *Lee* v. *Rousell,* 347 So. 2d 298 (La., 1977). It certainly is not substantial evidence that Ward either had notice or knowledge of the bankruptcy proceedings. It is not reasonable to say that Ward must have known of the bankruptcy under these conditions.

The proof presented by Meyers presented a prima facie defense to the complaint filed by appellant. However, the appellant overcame this defense by proof that appellee knew the address listed on the bankruptcy schedule was incorrect and had in fact visited appellant at his new address on several occasions. The burden then shifted back to appellee to show that appellant fit into the "unless" clause which required him to prove appellant had actual knowledge or notice of the bankruptcy proceeding as stated in § 17a, stated above. We

do not believe appellee discharged his second listed burden of proof. Therefore, the debt in question was not duly scheduled within the meaning of the act and was therefore not discharged according to the proof presented in the Pulaski County Circuit Court.

The case is reversed and remanded with directions to grant judgment to appellant for the unpaid amount of the debt owed by appellee to appellant.

Reversed and remanded.

BYRD, J., dissents.