**UNITED STATES of America,**
**Plaintiff,**

v.

**HERMETIC SEAL PRODUCTS COMPANY, Defendant.**

**Nos. 167-57, 359-59, 80-60.**

United States District Court
D. Puerto Rico,
San Juan Division.

Oct. 25, 1961.

Francisco A. Gil, Jr., U. S. Atty., San Juan, P. R., Patrick M. Kildea and Irwin Goldbloom, Washington, D. C., for plaintiff.

E. Cordova-Diaz, San Juan, P. R., Jules H. Sigal, Washington, D. C., and Louis A. Tepper, New York City, for defendant.

RUIZ-NAZARIO, Chief Judge.

I

Defendant in No. 167–57 Civil has moved the Court to reconsider its order of June 13, 1961, denying defendant's motion to dismiss.

■ There is no doubt in my mind that the *Renegotiation Board,* as distinguished from other departments or agencies of the government, received no notice of the first meeting of creditors as required by Title 11 U.S.C.A. § 94, sub. e. As for actual knowledge of the bankruptcy proceedings, the record here does not meet the criterion of Birkett v. Columbia Bank, 195 U.S. 345, at page 350, 25 S.Ct. 38, at page 40, 49 L.Ed. 231, wherein the actual knowledge necessary to defeat a creditor's claim is stated as follows:

"Actual knowledge of the proceedings, contemplated by the section, is a knowledge in time to avail a creditor of the benefits of the law, in time to give him an equal opportunity with other creditors, not a knowledge that may come so late as to deprive him of participation in the administration of the affairs of the estate, or to deprive him of dividends".

The motion for reconsideration must therefore be and hereby is denied.

II

Jurisdictional Question

Defendant has raised a very interesting question bottomed on the alleged inapplicability of the Renegotiation Act of 1951 to its Puerto Rican contracts. A novel construction of Section 9 of the Puerto Rican Federal Relations Act, Title 48 U.S.C.A. § 734, whereby general Federal Statutory law would apply to the Commonwealth of Puerto Rico only as it stood prior to, and existed as of, July 3, 1950, unless specifically extended to the Commonwealth by Act of Congress, is proposed and ably expounded in both the historical and the jurisprudential aspects.

I am, however, precluded from any consideration of this question in this case as the Renegotiation Act of 1951, as amended, 50 U.S.C.A.Appendix, § 1218, places final determination of amounts, if any, of excessive profits in the hands of the Tax

Court.[1] A decision as to what is a negotiable contract necessarily involves a decision as to coverage, in this case whether defendant's Puerto Rican contracts were covered by the Renegotiation Act. In Macauley v. Waterman S. S. Corp., 327 U. S..540, at pages 544 and 545, 66 S.Ct. 712, at page 714, 90 L.Ed. 839, the court stated as follows:

"Just as in the Myers case [Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 58 S.Ct. 459, 82 L. Ed. 638], the claim here is that the contracts are not covered by the applicable statute. And the applicable statute, the Renegotiation Act, like the National Labor Relations Act in the Myers case, empowers administrative bodies to rule on the question of coverage. The Renegotiation Act authorizes the Chairman of the Maritime Commission to conduct investigations in the first instance to determine whether excessive profits had been made on contracts with the Commission. A contractor aggrieved by the Chairman's determination of excessive profits may have them redetermined in a 'de novo' proceeding before the Tax Court.— Section 403(e) (1) of the Act provides that the Tax Court 'shall have exclusive jurisdiction, by order, to finally determine the amount, if any, of such excessive profits * * *.' Contrary to respondent's contention that this language limits the Tax Court's jurisdiction so as not to include the power to decide questions of coverage, we think the language shows that the Tax Court has such power. For a decision as to what are and are not negotiable contracts is an essential part in determining the amount of a contractor's excessive profits. The legislative history of the Renegotiation Act, moreover, shows that Congress intended the

Tax Court to have exclusive jurisdiction to decide questions of fact and law, which latter include the issue raised here of whether the contracts in question are subject to the Act. In order to grant the injunction sought the District Court would have to decide this issue in the first instance. Whether it ever can do so or not, it cannot now decide questions of coverage when the administrative agencies authorized to do so have not yet made their determination. Here, just as in the Myers case, the administrative process, far from being exhausted, had hardly begun. The District Court consequently was correct in holding that it lacked jurisdiction to act".

■ This Court is therefore without jurisdiction to consider the applicability of the Renegotiation Act to Puerto Rico or coverage of these contracts.

■ However the District Courts of the United States have original jurisdiction of civil actions commenced by the United States, 28 U.S.C.A. § 1345, and Title 50 Appendix § 1215, U.S.C.A., authorizes actions on behalf of the United States to recover excessive profits and accrued interest. Therefore as to the collection of the amounts claimed, this Court has jurisdiction.

The motions to dismiss for lack of jurisdiction on Numbers Civil 80–60, 359–59 and 167–57, are denied.

### Summary Judgments

Civ. No. 167–57:

Plaintiff's motion for summary judgment, heretofore denied, by order of April 1, 1959, because of the Court's doubt respecting defendant's discharge from the indebtedness claimed, is hereby reconsidered, after the trial of this issue held on April 25, 1961.

---

1. "* * * Upon such filing such court shall have exclusive jurisdiction, by order, to finally determine the amount, if any, of such excessive profits received or accrued by the contractor or subcontractor, and such determination shall not be reviewed or redetermined by any court or agency." Title 50 U.S.C.A.Appendix, § 1218.

It appearing from the record that there is no genuine issue as to any material fact and that the United States is entitled to judgment as a matter of law, it is ordered, adjudged and decreed that plaintiff the United States of America have and recover from defendant Hermetic Seal Products Company, P. R., the sum of $650,000, with interest thereon at 4% per annum from April 26, 1957, and the costs of this action.

Civ. No. 359–59:

Defendant's motion for summary judgment is hereby denied. It appearing from the record that there is no genuine issue as to any material fact, the United States is entitled to judgment as a matter of law.

It is therefore ordered, adjudged and decreed that plaintiff United States of America have and recover from defendant Hermetic Seal Products Company, P. R. the sum of $225,000 with interest thereon at 4% per annum from December 9, 1959, and the costs of this action.

Civ. No. 80–60:

The record in this case shows that there is now no genuine issue as to any material fact and that the United States is entitled to judgment as a matter of law. Defendant's motion for summary judgment is denied.

It is therefore ordered, adjudged and decreed that plaintiff United States of America have and recover from defendant Hermetic Seal Products Company, P. R., the sum of $100,000, and interest thereon at 4% per annum from April 20, 1960, and the costs of this action.