In the Matter of Wayne Moureau and Erika Moureau, Bankrupts.

Wayne MOUREAU, Appellant,

v.

LEASEAMATIC, INC., Appellee.

No. 76–1468
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Nov. 11, 1976.

Dale A. Dossey, Houston, Tex., for appellant.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir. 1970, 431 F.2d 409, Part I.

W. Gibbs Spiller, Houston, Tex., for appellee.

J. Craig Cowgill, Houston, Tex., for trustee.

Before WISDOM, GEE and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

Appellant Wayne Moureau, the bankrupt, here challenges the order of the district court which sustained, on appeal, the judgment of the bankruptcy judge declaring a debt of Moureau to appellee Leaseamatic, Inc., to be non-dischargeable and awarding appellee the principal amount of the indebtedness, interest, attorney's fees and costs. We affirm.

The basic facts are not in dispute. On April 5, 1972, Carpet Workroom, Inc., and G.A.C. Leasing Co. entered into an equipment lease, and Moureau executed a personal guaranty to secure the lease payments to G.A.C. The lease was immediately assigned to Leaseamatic, Inc., to which the lease payments were made. When a default in payments developed, Leaseamatic made demand on Moureau without success; and on December 17, 1973, it filed suit in a Texas state court against Carpet Workroom, Inc., and Moureau for the total rent payable under the lease. Service of process in this suit was not effected, however, until April 16, 1974, for the original citation had been returned unserved.

On March 4, 1974, Moureau's voluntary petition in bankruptcy was filed, followed the next day by the issuance of a general stay order. Though at the time the petition was filed formal demand under the lease had repeatedly been made on him, Moureau did not disclose the leased equipment or the indebtedness, the identity of Leaseamatic or G.A.C., or the pending state court proceedings in any of the schedules he presented to the bankruptcy judge. On April 25, 1974, the judge granted Moureau's application for discharge, and the next day Moreau filed his answer to Leaseamatic's complaint in the state court suit. The answer recited the commencement of the voluntary bankruptcy proceedings and the issuance of the stay order (copy of which was attached), but it did not disclose that Moureau's discharge had been granted just a day earlier. Moureau did not notify Leaseamatic of this fact until June 25, 1974, when he filed an amended answer in the state court suit and pleaded the discharge as a bar to recovery.

On July 25, 1974, Leaseamatic moved the bankruptcy court to revoke the discharge. Leaseamatic alleged, *inter alia,* that Moureau had deliberately attempted to foreclose its right to present its claim in bankruptcy and that, by the time it received actual notice of the proceedings and discharge, so little time remained as to preclude its effective participation as a creditor in the estate of the bankrupt. Moureau resisted the motion, asserting that Leaseamatic received *actual notice of the proceedings in sufficient time for proof and allowance of its claim* within the meaning of Section 17(a) of the Bankruptcy Act, 11 U.S.C. § 35 (1970), which provides:

"A discharge in bankruptcy shall release a bankrupt from all his provable debts, whether allowable in full or in part, except such as . . . (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy . . . ."

Following an evidentiary hearing, the bankruptcy judge, relying on the Supreme Court's decision in *Birkett v. Columbia Bank,* 195 U.S. 345, 25 S.Ct. 38, 49 L.Ed. 231 (1904), granted the motion, declared Moureau's debt to Leaseamatic non-dischargeable and gave it judgment in the total amount of $9,171.82. The district court affirmed, and this appeal followed.

We are inclined to the view that the *Birkett* decision controls the present case.

In *Birkett* the bankrupt failed to schedule a note which he knew was due and payable to the Columbia Bank. He was subsequently discharged. Two months later the bank received its first notice of the bankruptcy proceedings. There was still enough time for the Bank to prove its claim and to move to revoke the discharge; yet the Court said:

> Actual knowledge of the proceedings contemplated by the section is *a knowledge in time to avail a creditor of the benefits of the law—in time to give him an equal opportunity with other creditors—not a knowledge that may come so late as to deprive him of participation in the administration of the affairs of the estate* or to deprive him of dividends (section 65). *The provisions of the law relied upon by plaintiff in error are for the benefit of creditors, not of the debtor.* That the law should give a creditor remedies against the estate of a bankrupt, notwithstanding the neglect or default of the bankrupt, is natural. The law would be, indeed, defective without them. *It would also be defective if it permitted the bankrupt to experiment with it—to so manage and use its provisions as to conceal his estate, deceive or keep his creditors in ignorance of his proceeding without penalty to him.* It is easy to see what results such looseness would permit—what preference could be accomplished and covered by it. 195 U.S. at 350–351, 25 S.Ct. at 40 (emphasis added).

■ In view of these considerations it has long been held that the debtor must take great care in the scheduling of creditors. *See In re Venson,* 234 F.Supp. 271 (N.D.Ga.), *aff'd,* 337 F.2d 616 (5th Cir. 1964). His failure to do so will make the unscheduled debt non-dischargeable unless it is clear that the creditor had actual notice in ample time fully to protect .his rights. *See e. g., id.; In re Computer Utilization, Inc.,* 508 F.2d 673 (5th Cir. 1975). These cases make it clear that a debtor may not take lightly his obligation to schedule all his creditors, and a court will not read the actual notice exception to the scheduling requirement so broadly that the rights of unlisted creditors are compromised.

■ Turning to the present case, we find that, as in *Birkett,* notice of the discharge was provided two months after the fact. Furthermore, we cannot ignore Moureau's neglect to list the Leaseamatic debt in any of his schedules—despite its repeated demands for payment—and his failure even to mention the discharge in the pleading he filed in state court the day after the discharge was granted. Since the pleading did mention the bankruptcy proceedings, but not the discharge, Leaseamatic might well have been led to conclude that notice of the first meeting of creditors would shortly be forthcoming. While these facts do not establish fraudulent intent, they do indicate Moureau's complete disregard for the obligations imposed by the statute. Under these circumstances, to hold that the Leaseamatic debt was discharged would be to allow Moureau to "keep his creditors in ignorance of his proceeding without penalty to him." *Birkett, supra.* We therefore hold that the debt was not discharged.

As the other points raised by the appellant are without merit, the judgment is AFFIRMED.