Paul KNOTT et al., Plaintiff,

v.

PENNO LEASING CO., INC., Defendant.

No. C–2–78–473.

United States District Court,
S. D. Ohio, E. D.

April 12, 1979.

---

Mark T. Dykstra, Columbus, Ohio, for plaintiff.

Joseph F. Hutchinson, Jr., Akron, Ohio, for defendant.

## MEMORANDUM AND ORDER

DUNCAN, District Judge.

This action began as a lawsuit by the trustees of certain joint employer-employee fringe benefit funds created by written declarations of trust. Defendant Penno Leasing Company, Inc. (Penno) is a party to these declarations of trust and as such was apparently obligated to make contributions to the funds. The trustees claimed that Penno failed to make these required payments and sued to recover the amounts owed.

On July 14, 1978, Penno having failed to answer or otherwise move, the Court entered a default judgment against Penno. On September 7, 1978, Penno moved the Court to vacate the default judgment. The matter is presently before the Court on said motion. For the reasons stated below, Penno's motion to vacate will be denied.

Penno's motion is made pursuant to Rule 60(b)(4), Fed.R.Civ.P., which provides that a party may be relieved from a final judgment order where it can demonstrate that the judgment is for some reason void. Penno relies solely on Rule 60(b)(4) and does not allege any other grounds for vacating the judgment of July 14. Consequently the Court's discretion in deciding the motion is limited. Either the judgment is void or it is valid. Determining which it is may well present a difficult question, but when that question is resolved, the Court must act accordingly. *Jordan v. Gilligan,* 500 F.2d 701, 704 (6th Cir. 1974), *cert. denied,* 421 U.S. 991 (1975); 11 Wright & Miller *Federal Practice and Procedure* § 2862 (1973).

Penno claims the Court's judgment is void for the following reasons. In July 1976, Penno filed a petition for an Arrangement pursuant to Chapter XI of the Bank-

ruptcy Act[1] in the United States District Court for the Northern District of Ohio, Eastern Division. The order of confirmation of the defendant's Plan of Arrangement was approved and filed with that Court on June 16, 1978, nearly one month prior to this Court's default judgment. Rule 11–44 of the Bankruptcy Rules governing Chapter XI provides in pertinent part:

(a) Stay of Actions and Lien Enforcement. A petition filed under Rule 11–6 or 11–7 shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against him . . .

Pursuant to the above rule defendant claims that the action in this Court was automatically stayed, thereby rendering the subsequent judgment void. However, Rule 11–44 further provides:

(c) Annulment of Stay. At the expiration of 30 days after the first date set for the first meeting of creditors, a stay provided by this rule other than a stay against lien enforcement shall be deemed annulled as against any creditor whose claim has not been listed in the schedules and who has not filed his claim by that time.

Defendant concedes that plaintiff creditors were not listed in its schedules and thus the Court finds that the stay was annulled and of no effect on the proceedings in this Court.

Defendant next relies on the following provision contained in the confirmation order issued by the Bankruptcy Court and derived from Section 314 of the Bankruptcy Act:

b. Any judgment heretofore or hereafter obtained in any court other than this Court is null and void as a determination of the personal liability of the Debtors with respect to any of the following:

(i) Debts dischargeable under Section 17a and b of the Act;

It is clear from the above order, however, that the Bankruptcy Court intended to nullify judgments of other courts only insofar as those judgments concerned "dischargeable debts." Further, under Section 371 of the Act the binding effect of a confirmation order, outlined in Section 367, is qualified to the extent that debts "not dischargeable" under Section 17 still remain outstanding. See, 9 *Collier on Bankruptcy,* §§ 9.25[6] and 9.32[1] (1975). Thus the nub of the present action is the question whether the debts owed by defendant Penno to the benefit funds were in fact "dischargeable." If they were dischargeable, this Court's judgment of July 14 was void and should be vacated; if they were not, the judgment must stand.

Section 1(15) of the Bankruptcy Act defines "Discharge" as follows:

"Discharge" shall mean the release of a bankrupt from all of his debts which are provable in bankruptcy, except such as are excepted by this Act.

Section 17(a) of the Act provides in pertinent part:

A discharge in bankruptcy shall release a bankrupt from all of his probable debts, whether allowable in full or in part, *except* such as . . . (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, *unless such creditor had notice or actual knowledge of the proceedings in bankruptcy.* (Emphasis added.)

As stated previously, defendant's debts to plaintiffs were not scheduled before the Bankruptcy Court by Penno. Therefore, unless plaintiff creditors had "notice or actual knowledge" of Penno's Chapter XI proceedings, these debts would not be discharged. Section 17(a)(3), *supra.*

Penno claims that plaintiffs did have actual knowledge of the proceedings by virtue of two letters written by an attorney in Chicago, Louis E. Sigman, to Penno's attorney, which referred to Penno's Chapter XI

---

1. All references to the "Bankruptcy Act" in this opinion refer to the Bankruptcy Act of 1898, as amended. That is, the Bankruptcy Reform Act of 1978 has no bearing on this case.

proceedings.[2] The letters, written on August 23, 1977 and September 14, 1977, both contained a subscript as follows:

> cc:  William Fadel
>  Frank Gould
>  Jerry Graff
>  Earl A. Erwin

The above-named Earl A. Erwin (spelled "Irwin" in the September 14 letter) is one of the plaintiff trustees in the present action. Penno claims that because Erwin apparently was sent a copy of these letters he had actual knowledge of the Chapter XI proceedings, which knowledge is imputable to plaintiff, thereby making Penno's debt dischargeable. Erwin submitted an affidavit denying that he ever received a copy of these letters.

■ At the outset, the Court notes that defendant Penno has the burden of proof regarding plaintiffs' actual knowledge of Penno's Chapter XI proceedings. *Hill v. Smith,* 260 U.S. 592, 43 S.Ct. 219, 67 L.Ed. 419 (1923); *In re Venson,* 234 F.Supp. 271, 273 (N.D.Ga.1964), *aff'd,* 337 F.2d 616 (5th Cir. 1964); 1A *Collier on Bankruptcy* § 17.-23[6]. Upon consideration of the facts presented herein, the Court is unable to find that Penno has carried this burden.

2. The Sigman letters are set out in full below:

August 23, 1977

Mr. Frederick Lombardi
1500 Akron Center Building
Akron, Ohio 44308

> RE:  Penno Leasing Company,
>  Inc. Chapter XI pro-
>  ceeding claims of
>  Central Pension Fund

Dear Mr. Lombardi:

This letter will confirm our telephone conversation of August 22, 1977.

As you are aware we are the counsel for the Trustees of the Central Pension Fund of the International Union of Operating Engineers. During our phone conversation you were advised that the Company pursuant to the terms of a Collective Bargaining Agreement with I.U.O.E. Local 18 was required to submit fringe benefit contributions on behalf of its employees employed as heavy equipment operators and mechanics. In this regard the Company has failed to submit appropriate reports and contributions for the period April, 1976 through June, 1976 and August, 1976 through the present. It is the Trustees' position that all contributions due subsequent to the filing of the Chapter XI proceedings represent a cost of administration and must be promptly paid. Contributions due prior to the filing of the proceedings are a general unsecured claim.

It is my understanding that you will speak with Mr. John Pizzuto of the Company and request that he prepare appropriate contribution forms, including all employees coming under the jurisdiction of Local 18 I.U.O.E.

Thank you very much for your cooperation in regard to these matters.

> Sincerely,
> SHULMAN AND BAUM, LTD.
> /s/ Louis E. Sigman/ar
> Louis E. Sigman

LES:ar
cc:  William Fadel
    Frank Gould
    Jerry Graff
    Earl A. Erwin

September 14, 1977

Frederick Lombardi
1500 Akron Center Building
Akron, Ohio 44308

> RE:  Penno Leasing Company,
>  Inc. Chapter XI Pro-
>  ceeding

Dear Mr. Lombardi:

As you are aware, we are counsel for the Trustees of the Central Pension Fund of the International Union of Operating Engineers. On August 23, 1977, we wrote to you confirming a telephone conversation on August 22nd. The matters confirmed related to your preparation of appropriate contribution report forms, required by your Collective Bargaining Agreement with IUOE Local 18 for the period April, 1976 through June, 1976 and August, 1976 through the present. To date, we have failed to receive those reports and again request that same be prepared.

In addition, we request that you advise in five (5) days of receipt of this letter that preparation of these reports is in process.

In the absence of your response as requested herein, and the company's full cooperation in the prompt liquidation of the Trustee's claim, we shall have no alternative but to make an appropriate motion before the bankruptcy court.

Thank you very much for your anticipated cooperation in these matters.

> Sincerely,
> SHULMAN AND BAUL, LTD.
> /s/ Louis E. Sigman
> Louis E. Sigman

LES:mhb
cc:  William Fadel
    Frank Gould
    Jerry Graff
    Earl A. Irwin
Certified Receipt No. 228868.

The letters raised by Penno were written in Chicago by a lawyer who represents the Central Pension Fund of the International Union of Operating Engineers (I.U.O.E.). There is apparently no connection between this fund and the fund of which plaintiff Erwin is a trustee. Further, Erwin, in addition to his role as trustee for the Ohio Operating Engineers funds, is business manager of Local 18, I.U.O.E. It is apparently because the letters from Sigman to Penno's attorney referred specifically to Local 18 that Erwin was to be sent a copy. Such a tenuous connection between the information contained in these letters and Erwin's capacity as trustee for the Ohio pension fund is not foundation enough to support an inference of actual knowledge by the plaintiff trustees.

It also appears from the record that an employee of the Ohio Operating Engineers' Fringe Benefit Programs, Eddie Laing, acting as a liaison between plaintiffs and contributing employers such as Penno, was told by a secretary at Penno on or about June 11, 1977, that "to her knowledge" the company had pursued a "Section 11 bankruptcy." Laing's affidavit states that he told the secretary he did not agree with her because he had not received any documents or seen any papers evidencing such proceedings. Laing's attempts to meet with John Pizzuto, an official of Penno, were unsuccessful.

The Court feels that under the circumstances the Laing incident does not amount to actual notice. Laing served as liaison to more than 500 contractors in 1977. It is likely that he often heard rumors and idle talk about these companies. It would not be fair to impute to the fund trustees actual knowledge of matters heard by the peripatetic Laing, especially when such information came not from a principal of defendant, but from a third party.

■ In general the Court is constrained to implement the objects of the Bankruptcy Act. The object of Section 17 is to protect the creditor, not the debtor. *Birkett v. Columbia Bank,* 195 U.S. 345, 350, 25 S.Ct. 38, 49 L.Ed. 231 (1904); *United States v. Yale Transport Corp.,* 184 F.Supp. 42, 47 (S.D.N.Y.1960). Thus it is incumbent on the debtor to schedule his creditors or notify them of his Chapter XI proceedings. Failure to do so renders the debt nondischargeable "unless it is clear that the creditor had actual notice in ample time fully to protect his rights." *Moreau v. Leaseamatic, Inc.,* 542 F.2d 251, 253 (5th Cir. 1976); *In re Venson, supra.* Here it is certainly not "clear" that plaintiffs had actual notice of the Penno proceedings. The Court agrees with the Fifth Circuit in *Leaseamatic, supra,* that

> [A] debtor may not take lightly his obligation to schedule all his creditors, and a court will not read the actual notice exception to the scheduling requirement so broadly that the rights of unlisted creditors are compromised. *Id.*

■ In view of the above the Court finds that the information contained in the two Sigman letters, obliquely directed at Earl Erwin, and the snatch of information picked up from a secretary by Eddie Laing, do not amount to actual knowledge sufficient to allow the discharge of Penno's debts under the Bankruptcy Act. Because of this, and because Penno has raised no other grounds on which to support its motion to vacate this Court's judgment of July 14, 1978, that judgment must stand. Penno is foreclosed from further litigating the merits of the cause or contesting the damages awarded. Penno's motion to vacate is hereby DENIED.