**In re W. Dean ROBINSON, Bankrupt.**

**W. Dean ROBINSON, Plaintiff,**

**v.**

**Leona CURRIER, Kenneth Dietrich, Dolores Higgins, and Lorraine Robinson, Defendants.**

**Bankruptcy No. ReB76–1963.**

United States Bankruptcy Court, D. Oregon.

Dec. 28, 1979.

128

Daniel G. Hoar, Portland, Or., for defendants.

Gary M. Bullock, Portland, Or., for plaintiff.

FINDINGS OF FACT AND CONCLUSIONS OF LAW DETERMINING DEBT TO BE NONDISCHARGEABLE (AMENDED)

DONAL D. SULLIVAN, Bankruptcy Judge.

Plaintiff bankrupt filed a complaint to obtain a determination that a debt which he failed to schedule is discharged because the original obligee on the debt had notice and actual knowledge of the bankruptcy within the meaning of § 17a(3) of the Bankruptcy Act. The Court reopened the bankruptcy on October 22, 1979, to consider the complaint. The Court tried the case on December 7, 1979. Mr. Gary Bullock represented the plaintiff. Mr. Daniel G. Hoar represented the defendants. Joyce Zaro reported the proceedings.

The plaintiff on September 5, 1974, signed a note and borrowed $4,000 from Mathias P. Dietrich, who was his father-in-law at the time. In approximately May of 1976, plaintiff separated from his wife, and on July 19, 1976 filed a bankruptcy petition and schedules. He failed to schedule the debt to his father-in-law. The Court held a first meeting of creditors on August 16, 1976, set October 18, 1976 as the last day to object to discharge, and granted a discharge on October 19, 1976. Acting under Bankruptcy Rule 203b, the Court initially did not set a time to file claims but later, when assets were recovered, the Court set April 25, 1977, as the time by which creditors must file a claim. After the trustee paid a small dividend, the clerk closed the bankruptcy on July 11, 1977. In early 1979, the Circuit Court entered a decree dissolving plaintiff's marriage. On March 5, 1979, Mathias P. Dietrich, plaintiff's former father-in-law assigned the note to his four children. Shortly thereafter, Mr. Dietrich died. The children, who included plaintiff's former wife, filed a lawsuit in Clackamas County to collect the note. Plaintiff never made any payments on the note.

I find that the debt described in the complaint is not discharged under § 17a(3) because Mathias P. Dietrich did not have notice or actual knowledge of the bankruptcy within the meaning of this section and because the consequences of the omission of the debt from the schedules cannot be cured at this time. Specifically, I find that plaintiff has not sustained his burden of proving that his father-in-law had knowledge either within time to permit a meaningful participation in the bankruptcy or within time to file a proof of claim. In addition, I find that because of passage of time, the death of the father-in-law, the plaintiff's negligent failure to remedy the omission before suit was brought on the note, and the disruption to the bankruptcy proceeding, the circumstances are neither extraordinary nor sufficient to justify exercising discretion to renew the claims period, hold another meeting of creditors, reopen the period to object to discharge, pay a dividend or to take other necessary measures to restore rights lost to the creditor because of plaintiff's failure to schedule him.

Under § 17a(3), a debtor who initially omits a creditor from his schedules may nevertheless obtain a discharge of the debt if he schedules the creditor "in time for proof and allowance," or if the creditor had "notice or actual knowledge of the proceedings in bankruptcy."

Prior to 1970, the Bankruptcy Court dealt with amendment and scheduling issues, while nonbankruptcy courts normally dealt with dischargeability. Each court developed separate methods of dealing with the problem of the omitted creditor. For this reason, there evolved two separate and independent lines of authority governing the consequences of and the remedies arising from the failure to list a creditor.

One line of authority focused on the express language of § 17a(3) dealing with the effect of scheduling a debt before expiration of the claims period; the other line of authority focused on the language of the section dealing with the effect of knowledge of the bankruptcy to the exclusion of the deadline imposed in the first clause. Because of the bifurcation of jurisdiction between dischargeability and amendment of schedules, neither line of authority had occasion to recognize the other.

In *Birkett v. Columbia*, 195 U.S. 345, 25 S.Ct. 38, 49 L.Ed. 231 (1904), the Supreme Court held that the dischargeability of a debt under a predecessor to § 17a(3) depended upon whether the creditor received notice or knowledge of the bankruptcy "in time to give him an equal opportunity with other creditors—not a knowledge that may come so late as to deprive him of participation in the administration of the affairs of the estate, or to deprive him of dividends . . .". 195 U.S. at 350, 25 S.Ct. at 40. The Supreme Court ignored the first part of the section which appeared to allow the debtor to amend the schedules during the claims period. Although discharge had been issued, the claims period, which was one year, had not expired when the creditor learned of the bankruptcy. See dissent in *Columbia v. Birkett*, 174 N.Y. 112, 66 N.E. 652, 22 Am.B.R. 481 (1903). The *Birkett* decision has been followed in dischargeability cases up to the present. *Moureau v. Leaseamatic, Inc.*, 542 F.2d 251 (5th Cir. 1976); *Hermetic Seal v. U. S.*, 307 F.2d 809, 815 (5th Cir. 1962), affirming 198 F.Supp. 749 (D.C.P.R.1961); *Steffen v. Union Adjustment Co.*, 3 BCD 41 (C.D.Cal.Bankr. 1977).

Where a bankrupt sought to amend the schedules after the expiration of the claims period under § 7a(8) for the purpose of discharging the debt under the first clause of § 17a(3), a second line of authority, without discussing the need to reopen the claims period, held that the Bankruptcy Court had discretion to consider allowing the amendment and, by inference, the discharge of the omitted debt. *Robinson v. Mann*, 339 F.2d 547 (5th Cir. 1964); *In the Matter of Benak*, 374 F.Supp. 499 (D.C.Neb.1974); *In re Boynton*, 24 F.Supp. 267 (D.C.Wash.1938); *In re Magwood*, 13 F.Supp. 661 (D.C.N.Y. 1936); *In re Adams*, 242 F. 335 (N.D.Ga. 1917); *In re Callaham*, 3 BCD 501 (Bankr. Ore.1977). Under *Robinson* and related cases, the Court retained discretion in exceptional circumstances upon finding that the omission was not intentional or fraudulent, that there would be no undue disruption to the proceeding, and that prejudice arising from the failure to schedule can be corrected.

Under the law governing the present case, the *Birkett* rule should be reconciled with the *Robinson* rule. The 1970 amendments to the Act granted to the Bankruptcy Court jurisdiction over dischargeability, and ended the historical reason for the existence of two separate rules governing the consequences under § 17a(3) of omitting a creditor from the schedules. For this reason, the outcome of this case should not depend upon the mechanics of whether the plaintiff bankrupt asks to amend his schedules and to extend the time to file claims before he asks for a determination of dischargeability.

*Robinson* imposes discretionary standards for dischargeability by amendment which are additional and successive to the fixed standard governing dischargeability by knowledge imposed in *Birkett*. This result may be partially carried into 11 U.S.C. 523(a)(3) of the new Bankruptcy Code, which abolishes the *Birkett* rule but leaves for later decision whether the *Robinson* rule governing amendments should survive. Nevertheless, both *Birkett* and *Robinson* are reconcilable and should be applied as the law governing this case.

In any event, the plaintiff bankrupt, has the burden of proof in establishing "actual" knowledge under § 17a(3) of the Act. *Venson v. Housing*, 337 F.2d 616 (5th Cir. 1964); *1A Collier on Bankruptcy* 17.23[6], at 1696 (14th Ed.). Actual knowledge must be more than casual information and should include knowledge of where and when the bankruptcy has been filed. *Venson v.*

*Housing*, supra; *Brown v. Tucker*, 139 Ga. App. 740, 229 S.E.2d 541, 542 (1976); *Lashover v. Audler*, 171 So.2d 834 (La.App.1965); *In re Still*, 3 BCD 783, 784 (N.D.Ga.1977). The quality of the notice must be more than rumor and must be sufficient to induce a creditor to reasonably seek out the bankruptcy case, file a claim, and to otherwise participate in the proceedings.

Essentially, the only evidence of the creditor's timely knowledge came from the testimony of Lorraine Robinson, the bankrupt's former wife, who testified in a deposition on May 1, 1979, that her father learned of the bankruptcy "Probably within three or four months . . . .". Under the *Birkett* rule, this would not amount to sufficient notice in that the first meeting of creditors, the election of a trustee and other meaningful aspects of a creditor's participation would have occurred prior to "three or four months."

If one were to distort *Birkett* as sanctioning the last day for filing claims as the deadline for acquiring knowledge, Mrs. Robinson's "three or four months" statement would be more probative, since the last day for filing claims was nearly nine months after the bankruptcy filing. However, Mrs. Robinson's testimony was so vague on the exact time of knowledge that considering her entire testimony, it is impossible for this Court to accept her statement as adequately establishing when her father learned of the bankruptcy. In the same deposition, she said it was "that year" after filing that her father found out, and on another occasion she said she didn't know at all. In her testimony before this Court, she equivocated even further, never committing herself to a particular time for her father's knowledge of the bankruptcy.

The confusion over dates should have been cleared by the bankrupt himself, but at trial he failed to offer any explanation for failing to list his father-in-law as a creditor in his bankruptcy schedules or for failing to notify his father-in-law formally or informally of the filing of a petition before his death. The father-in-law cannot testify and the picture presented by the other family members testifying at trial was one of distance, not only in the geographic sense but in the sense of intra-family communication as well. Christmas get-togethers provided almost the only occasions for family discussions. Under these circumstances—as well as the fact that the father-in-law failed to take any action in this Court himself prior to his death this year—this Court must conclude that Mathias P. Dietrich did not have sufficient knowledge of his son-in-law's bankruptcy to enable him, under the rule in *Birkett*, to participate in a meaningful way in the proceedings.

Applying the *Robinson* rule, only impermissible speculation, some of which could be unfavorable to plaintiff, may explain why he failed to schedule his father-in-law and why he waited over three years and until suit was brought to do anything. During this period of plaintiff's inaction, the omitted creditor died, a fact which has immeasurably increased the defendants' problem of proof and unfairly tilted the evidentiary gamble in plaintiff's favor. As a matter of discretion, it is too late to reopen the claims period, the time to object to discharge or to dischargeability, or to disrupt a closed proceeding by holding a creditors' meeting, selecting a trustee, attempting to find a way to pay a dividend, and by attempting to restore to the deceased creditor other procedural rights he might have enjoyed had the plaintiff properly listed him in the original schedules. *Robinson* should not be used in this case to remove the penalty for failure to list the creditor.

For the foregoing reasons, which shall constitute my findings of fact and conclusions of law on the issue of dischargeability, the debt owing to defendants shall be declared nondischargeable under § 17c of the Bankruptcy Act. If other defenses to the note exist, plaintiff shall be allowed fifteen days to file an amended complaint. Otherwise, defendants may apply for judgment.