**In the Matter of David Michael Scott ROBERTSON, Bankrupt.**

**Bankruptcy No. 79–01031–A.**

United States Bankruptcy Court,
E. D. Virginia,
Alexandria Division.

Aug. 21, 1981.

Nelson C. Cohen, Levitan, Ezrin, West, Weinstein & Kerxton, Washington, D. C., Leslie W. Lickstein, Clary & Pijor, P. C., Springfield, Va., for debtor.

W. McCauley Arnold, Cowles, Rinaldi & Arnold, Ltd., Fairfax, Va., for Larry Davis and Lois Davis.

Richard J. Stahl, Annandale, Va., trustee in bankruptcy.

## MEMORANDUM OPINION

MARTIN V. B. BOSTETTER, Jr., Bankruptcy Judge.

This matter initially came on for hearing on the application of David Michael Scott Robertson to reopen his bankruptcy estate. Robertson also sought a stay of a suit pending in state court brought by two of his creditors, Larry Davis and Lois Davis, husband and wife. The Court issued an order

to show cause why a permanent injunction should not be entered against the Davises and, further, whether this Court should hold them in contempt. During the course of the hearing it became evident that the principal issue to be resolved was whether the Davises had received due notice of Robertson's bankruptcy. This proceeding was put over to a later date for the purpose of hearing argument on this issue, whereupon the Court placed the matter under advisement.[1]

Robertson filed a voluntary petition in bankruptcy under Chapter VII of the Bankruptcy Act on September 27, 1979. The notice of bankruptcy proceeding was mailed by the Clerk's Office of this Court on October 3, 1979 for the purpose of notifying creditors of the first meeting of creditors to be held on October 16, 1979.

The Davises were listed in Robertson's schedules as the holders of unsecured judgment claims in the amount of $68,774.78. Their address was listed at "5858 Harper Road, Cleveland, Ohio 44137" ("Harper Road"). The notice sent to this address was returned to the Court with the postal service notation that it was neither deliverable as addressed nor could it be forwarded.

Robertson received a general discharge in bankruptcy on February 29, 1980. On even date, the Court entered an order approving the trustee's final report finding that Robertson's estate had no assets and closing said estate.

On or about March 17, 1980, the Davises applied for an order in the Circuit Court of Fairfax County, Virginia, requiring Robertson to appear before a Commissioner in Chancery. This was for the purpose of ascertaining Robertson's estate upon which an execution to satisfy judgments obtained against him by the Davises in 1976 and 1973

could be had. Later, the Court granted Robertson's application to reopen his bankruptcy estate and institute this proceeding.

Reference is had to the law applicable in this proceeding. Section 7(a)(8) of the Bankruptcy Act (11 U.S.C § 25(a)(8)) provides in pertinent part that a voluntary bankrupt must file with his petition "[a] list of all his creditors, including all persons asserting contingent, unliquidated, or disputed claims, showing their residences or places of business, if known, or if unknown that fact to be stated...." A bankrupt's failure to schedule a debt properly in his petition shall result in that debt's exception from the operation of a discharge upon a finding by the Court that it had "not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy...." 11 U.S.C. § 35(a)(3). Cases dealing with this requirement have uniformly held that the criteria set forth therein must be strictly interpreted. 1A *Collier on Bankruptcy*, ¶ 17.23[1], p. 1680 (14th ed. 1978).

It is uncontroverted that "due scheduling" requires that the bankrupt take great care in setting out the residence or business address of each creditor. He will be held to a standard of exercising reasonable diligence in ascertaining a creditor's correct address. Of course, whether a bankrupt has duly scheduled a debt depends upon the particular circumstances of each case. *Bartlett v. Taylor*, 209 Mo.App. 612, 238 S.W. 141 (1922).

A review of the record reveals that not only did Robertson incorrectly list the Davises' address, but that this listing was an outdated business address, rather than a current address for the Davises. A correct

---

1. Following the second hearing, Robertson filed a supplemental memorandum with eight exhibits appended thereto, marked exhibits "A" through "H" respectively. The Davises, in their supplemental memorandum, strenuously objected to certain factual allegations made by Robertson in his supplemental memorandum and objected to any consideration of the exhibits appended thereto by Robertson on the

grounds that they had not been made a part of the record at either hearing. Therefore, the Davises urge the Court not to consider any exhibits not admitted into evidence at the hearing or any allegations of fact based thereon. The Court is in agreement with the position advocated by the Davises and, accordingly, declines to give any probative weight to the proffered exhibits.

address should have read "5858 Harper Road, *Solon*, Ohio 4413*9*." Solon is a suburb of Cleveland.

Robertson testified that he procured the Davises' address from pleadings located in the records of the Circuit Court of Prince George's County, Maryland ("judgment pleadings"). Testimony was had to the effect that since 1974 Larry Davis' business address has been 32000 Solon Road, Solon, Ohio 44139." The Davises' residence address presently is "15 Hunting Hollow Drive, Pepper Pike, Ohio."

Robertson concedes that the address he listed in the schedules for the Davises refers to "Cleveland" rather than "Solon", Ohio. Robertson's testimony revealed that he assumed the address procured from the judgment pleadings was a current listing of the Davises' residence rather than an outdated business address.

The Davises assert that they neither received notice of Robertson's bankruptcy nor did they have actual knowledge of his having filed a petition in bankruptcy. Therefore, the Davises contend that the judgment debt listed in Robertson's schedules should be excepted from the latter's general discharge. The Davises assert two principal arguments in support of their position. First, Robertson erroneously listed the Davises' address as being located in Cleveland rather than Solon, as well as listing an incorrect zip code. Second, by listing a miscopied and outdated address, Robertson failed to exercise reasonable diligence in ascertaining whether the address found in the judgment pleadings was the Davises' current and correct address.

With respect to their first contention, the Davises rely upon two cases which held that the debts owed creditors, whose addresses were incorrectly listed in the bankruptcy schedules, were excepted from the bankrupts' general discharge. The courts in the cases of *State Farm Mutual Automobile Insurance Company v. Hall*, 559 P.2d 357 (Kan.1977) and *Venson v. Housing Authority of the City of Atlanta*, 337 F.2d 616 (5th Cir. 1964) considered similar factual situations where the bankrupts therein listed as the creditors' addresses the courts where a creditor's personal injury claim was pending and where a judgment for a judgment creditor had been granted. The *Hall* and *Venson* courts found these listings of addresses constituted an insufficient scheduling on the bankrupts' part.

These cases appear to be distinguishable on their facts from the instant proceeding. Robertson procured an address from the judgment pleadings and listed this address, albeit incorrectly, in his schedules.[2] In any event, although it is uncontroverted that Robertson incorrectly copied the Harper Road address from the judgment pleadings onto his schedules, this of itself does not appear to resolve the issue at hand.[3] It is

---

2. In his supplemental memorandum Robertson refers the Court to the envelope in the case file containing the notice addressed to the Davises which was returned to the Court undelivered. Robertson next refers the Court to two yellow forwarding labels affixed to this envelope by the postal service. He maintains that the address stated on the envelope was in fact delivered to "5858 Harper Road, Solon, Ohio 44139" but that the occupants of this address, Daus and Lo Presti, had since moved to another address, which is noted on the second yellow forwarding label as "55 Public Square No. 1420, Cleveland, Ohio 44113". Although not admitted as an exhibit at either hearing, Robertson appended a xerox copy of what purports to be an explanatory guide provided to him by the postal service which explains the coded numerals on the aforesaid forwarding labels (denoted Exhibit "H").

As noted above, *supra* at 2, the notice sent to the Davises was returned on October 19, 1979 to the Clerk's Office of this Court. This was a mere twenty-two days after Robertson filed his petition in bankruptcy. The Court is of the opinion that this placed Robertson on notice that his address for the Davises was inadequate and, as such, is supportive of the proposition that he was under an affirmative duty to look beyond the address found in the judgment pleadings.

3. Robertson argues that Solon should be considered synonymous with Cleveland. In his *supplemental memorandum*, Robertson refers to a 1974 letter written to him by Larry Davis on the latter's letterhead which incorporated a business address of "29005 Solon Road, Solon (Cleveland), Ohio." This letter, notwithstanding Robertson's contention to the contrary, was never marked, identified, introduced or admit-

apparent that the Davises must establish that Robertson was under an obligation to look beyond the judgment pleadings to meet his statutory duty of duly scheduling his debts.

The Davises cite the Court to several decisions which held that the exercise of reasonable diligence on the bankrupts' part in ascertaining the respective creditors' correct addresses required the bankrupts to have consulted a telephone or city directory.

In *Van Denburgh v. Goodfellow*, 19 Cal.2d 217, 120 P.2d 20 (1941), the court found that where a bankrupt incorrectly stated the room number of a commercial building in the address listed in his schedules the debt was not properly scheduled. The court found that as the city telephone directory was accessible to the bankrupt he should have examined it to ascertain the correct address. Similarly, the court in *Behymer Corporation v. Steffe*, 400 S.W.2d 457 (Mo.App.1966) determined that where the bankrupt relied upon a receipt book and an outdated city telephone directory which resulted in the listing of the creditor's old address, the debt in question was not duly scheduled. In reaching this decision, the court noted that the bankrupt (who worked regularly in St. Louis) listed an address which was two years old "although current information was readily available to him from any St. Louis telephone book or city directory." *Id.* at 460.

The Davises next refer the Court to *Ward v. Meyers*, 578 S.W.2d 570 (Ark.1979). The court in *Ward* held that a creditor was not properly scheduled where the bankrupt relied upon an address found in an outdated telephone directory although he was aware that the creditor had since moved and had even visited the latter's new residence on several occasions.

Robertson counter contends that he was under no obligation to consult the Cleveland metropolitan area telephone directory inasmuch as he had no direct access to this directory when he filed his bankruptcy petition so as to verify the Davises' current address. Robertson relies principally on a 1915 decision by the United States Supreme Court, *Kreitlein v. Ferger*, 238 U.S. 21, 33, 35 S.Ct. 685, 689, 59 L.Ed. 1184 (1915) for the proposition that there "is no presumption that bankrupts have access to directories containing the street addresses of their creditors throughout the land[.]"

In further support of his position Robertson appended a certified copy of page 188 of the May 1979 (1979–1980) Cleveland Metropolitan Area Telephone Directory (White Pages) to his supplementary memorandum. Page 188 lists all the Davises whose first names begin with an "L". Robertson observes that nowhere is there listed the "Larry Davis Construction Company". An examination of page 188 reveals that in the upper left-hand corner of said page is a notation which reads "D RESIDENCE 188 DAVIS I—DAVIS Q". It is apparent that this edition of the Cleveland area telephone directory is divided into two sections—"residence" and "business, professional and organizational". The current edition of the Cleveland area telephone directory (1980–1981), for instance, in the latter section, lists the "DAVIS LARRY CONSTR. CO. 32000 Solon— _ _ _ _ 248–7770" on page 65 therein.[4]

A review of the Defendant's Exhibit "A", the November 29, 1971 letter addressed to Larry Davis from Robertson, reveals that Robertson, in 1971, was aware of Davis' telephone number, wherein he stated that "[t]his [letter] will confirm our telephone

ted into evidence as an exhibit at the hearings. Rather, the letter offered as an exhibit and admitted into evidence was a 1971 letter (Defendant's Exhibit "A") written to Larry Davis. Thus, it is evident that as early as 1971 Robertson was aware that the correct city address was Solon rather than Cleveland.

4. Under Rule 201(c) of the Federal Rules of Evidence the Court, as a matter of discretion,

may *sua sponte* take judicial notice of an adjudicative fact not subject to reasonable dispute among the parties. Subdivision (e) of Rule 201 provides that in the absence of prior notification "[a] party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice ... after judicial notice has been taken." *See* 10 *Moore's Federal Practice*, § 201[3.—4]—(e) (2d ed. 1979).

conversation today in reference to the warehouse space on Sheldon Road in Cleveland." The July 9, 1974 letter, appended to Robertson's supplemental memorandum as Exhibit "B", addressed to Robertson from Larry Davis states, in pertinent part: "I [Davis] would greatly appreciate your [sic] calling me, at your convenience, so that we may discuss the status of our disagreement." This letter, which was on company stationery, contained the following letterhead, to wit: "Larry Davis Construction Company 29005 Solon Road Solon (Cleveland), Ohio 44139 (216) 248–7770." It should be noted that the latest edition of the Cleveland area telephone directory (1980–1981), which contains the current address for Larry Davis' construction company, also lists his business telephone number as [area code 216] 248–7770."

The submission of the July 9, 1974, letter by Robertson to the Court absent evidence to the contrary, implicitly leads one to conclude that this letter (which incorporates Davis' still-current business telephone number) was available to him when he prepared the schedules in his bankruptcy petition.

Robertson maintains that in listing the Davises' address, as stated in the judgment pleadings, he exercised that degree of reasonable diligence required of him by statute and having done so was under no duty to make further inquiry. However, his assertion that he should not be held to insure the absolute accuracy of his schedules, in the context of the rationale enunciated by the court in *King v. Harry*, 131 F.Supp. 252 (D.D.C.1955) [5] is not applicable in the present case. Robertson's reliance on this case is questionable inasmuch as the *King* court, at 254, was evidently persuaded by the fact that the notice sent to the creditor was not returned to the bankruptcy court. As previously stated, *supra* at 729, n. 2, the Clerk's Office of this Court did receive

the notice sent to the Davises. The Court notes too that the Davises were by far the largest of some twenty-three unsecured creditors holding judgments against Robertson ($68,774.78). Furthermore, the Davises were granted judgments against him within three years of his filing for bankruptcy—in 1976 as well as in 1973.

■ Although a bankrupt is not required to exhaust every possible avenue of information in ascertaining a creditor's address, he must exercise reasonable diligence in accurately scheduling his debts. In the event a creditor establishes proof of error in the scheduling of a debt owed to him, the bankrupt must necessarily justify the inaccuracy in his schedules. Furthermore, the fact that a bankrupt's failure to duly schedule a "debt was innocent, or was fraudulent, wilful, intentional or careless [is immaterial]; the fact, not the intent, is controlling...." *Bucci v. La Rocca*, 21 N.J.Misc. 316, 33 A.2d 878, 882–883 (Cir.Ct. 1943).

■ In light of the circumstances of the present case, it cannot be said that Robertson, having a current telephone number available to him, was without reasonable means to verify the accuracy of the address found in the judgment pleadings. The fact that Robertson miscopied the address in the judgment pleadings, although not of itself dispositive of this case, is indicative of his failure to exercise that degree of meticulous care required of him in scheduling his debts. *See Coller v. Harmon*, 227 A.2d 385, 387 (D.C.App.1967). This error, when considered in conjunction with Robertson's failure to make further inquiry in ascertaining the Davises' correct address, justifies the conclusion that he did not meet his statutory duty to duly schedule the Davises' claim in accordance with Sections 7(a)(8) and 17(a)(3) of the Bankruptcy Act.

---

5. The court in *King v. Harry, supra,* 131 F.Supp. at 254–255 stated, in pertinent part:
 "It is too much to ask that the bankrupt be held to insure the absolute accuracy of the schedule.
 "... The Court is fully aware that schedules are often hurriedly prepared, and as of-

ten, considerably after the date of the transaction out of which the debt arose, at a time when papers and memories do not always furnish a satisfactory record of such detail as the precise residence of every creditor."

Robertson next asserts that should the Court determine that the debt owed the Davises was not duly scheduled, he maintains that the Davises did receive actual notice of the bankruptcy proceeding "... in time for proof and allowance..." as required by Section 17(a)(3) of the Bankruptcy Act.

▪ It is a principle of uniform application that the burden of proof in establishing "actual" knowledge is on the bankrupt. *Venson v. Housing Authority of the City of Atlanta, supra.* Mere constructive notice or imputed knowledge of the bankruptcy proceeding is insufficient in this regard. Rather, such knowledge must actually exist and should include information as to where and when the bankrupt's petition in bankruptcy was filed. *Robinson v. Currier,* 2 B.R. 127, 129 (Bkrtcy.D.Ore.1979). Thus, it is clear that if the bankrupt is to "avoid the effect of his omission of a creditor's [address] from his schedules, he must prove the facts upon which he relies." 1A *Collier on Bankruptcy, supra,* ¶ 17.23[6] at p. 1698, *citing Hill v. Smith,* 260 U.S. 592, 594, 43 S.Ct. 219, 220, 67 L.Ed. 419 (1923).

Robertson's position appears to be that since the Davises allegedly learned of the bankruptcy proceeding in time for proof and allowance of their claim, the debt in question should not be discharged. Although not precisely articulated by Robertson in his memorandum, he apparently is relying upon a line of cases holding that bankruptcy courts, as a matter of discretion, may permit bankrupts to amend their schedules by adding the omitted creditor, thereby discharging the omitted debt. Representative of this line of authority is *Robinson v. Mann,* 339 F.2d 547 (5th Cir. 1964).[6]

In a well-reasoned opinion, the Bankruptcy Court for the District of Oregon in *Robinson v. Currier, supra* (Sullivan, Jr.) examined the two lines of authority which developed prior to the 1970 amendments to the Bankruptcy Act increasing the jurisdiction of Bankruptcy courts to determine questions of dischargeability as well as with amendment and scheduling issues.[7] Judge Sullivan noted that representative of these lines of authority were *Birkett v. Columbia Bank,* 195 U.S. 345, 25 S.Ct. 38, 49 L.Ed. 231 (1904) and *Robinson v. Mann, supra,* respectively.

Under the *Birkett* rule, actual notice and knowledge, as contemplated by Section 17(a)(3) "is a knowledge received in time to allow a creditor to prove his claim and to avail himself of an equal opportunity with other creditors to participate in the administration of the affairs of the estate." 1A *Collier on Bankruptcy, supra,* ¶ 17.23[5] at p. 1695 *citing Birkett v. Columbia Bank, supra.*

The second line of authority, of which *Robinson v. Mann, supra,* is representative, "imposes discretionary standards for dischargeability by amendment [where the bankrupt seeks to amend his schedules after the expiration of the period for filing claims under Section 7(a)(8) in order to discharge the debt under the first clause of Section 17(a)(3)] which are additional and successive to the fixed standard governing dischargeability by knowledge imposed by *Birkett.*" *Robinson v. Currier, supra,* 2 B.R. at 129.

A review of the record in the present case reveals that the first meeting of creditors was held on October 16, 1979. Therefore, the six-month period for filing proofs of claim, which began to run on even date, expired on or about April 16, 1980.

---

**6.** Under *Robinson* and related cases, courts of bankruptcy retained discretion in exceptional cases to permit a bankrupt to amend his schedules by including an omitted obligation upon a finding that the omission was neither fraudulent nor intentional and that any prejudice to the omitted creditor and disruption to the proceeding could be corrected.

**7.** The 1970 amendments to the Bankruptcy Act eliminated the reason for the separate exist-

ence of two independent lines of authority which engrafted rules of construction pertaining to the omitted creditor under Section 17(a)(3). Such a reconciliation has the beneficial effect of eliminating the mechanical determination of whether the bankrupt requests the court to allow the amendment of "his schedules and to extend the time to file claims before he asks for a determination of his dischargeability." *Robinson v. Currier, supra,* 2 B.R. at 129.

In a letter appended to Robertson's motion for stay and application to reopen his estate, dated April 8, 1980 (certified mail, return receipt requested) addressed to the Davises' attorney the former was notified of Robertson's discharge in bankruptcy. A copy of the return receipt appended thereto indicates that the Davises' attorney received this letter on April 10, 1980.[8] Larry Davis testified, however, that he did not receive notice of Robertson's bankruptcy until August of 1980.

 The general rule is that notice to a creditor's attorney is "sufficient if the attorney received knowledge of the proceedings while representing the creditor in enforcing his claim against the bankrupt." 1A *Collier on Bankruptcy, supra,* ¶ 17.23[5] at p. 1694. Notwithstanding the application of this general rule, the requirements of the law will be satisfied only where "[n]otice or actual knowledge ... comes to someone who has clear authority to act for the creditor and which provides ample opportunity [for the creditor] to participate in the bankruptcy proceeding...." *Katz v. Kowalsky,* 296 Mich. 164, 295 N.W. 600, 604 (1941).

Under the most liberal construction of the rule enunciated in *Birkett,* the adoption of Robertson's position sanctioning the expiration of the claim filing period as the time frame permissible for a creditor to acquire knowledge is clearly untenable. Even if the Court found that the April 8, 1980 "notice" letter sufficiently establishes the presumption that the Davises' counsel advised the Davises of Robertson's bankruptcy, it cannot be said that knowledge acquired by creditors less than one week before the expiration of the claim filing period constitutes sufficient notice.

The court in *Robinson v. Currier, supra,* 2 B.R. at 130, applying the rule enunciated in *Robinson v. Mann, supra,* held "[a]s a matter of discretion, it [was] too late to reopen the claims period, the time to object to discharge or to dischargeability, or to dis-

rupt a closed proceeding by holding a creditors' meeting, selecting a trustee, [and] attempting to find a way to pay a dividend...."

Accordingly, as the Court is of the opinion that the Davises received neither due notice nor had they actual knowledge of Robertson's bankruptcy proceeding, the judgment debt listed in Robertson's schedules in the amount of $68,774.78 is excepted from his general discharge.

An appropriate Order will enter.

---

8. Although appended to Robertson's motion for stay, his attorney's letter to the Davises' attorney advising the latter of Robertson's discharge in bankruptcy was not admitted as an exhibit at either of the two hearings held in this proceeding.